Judge Marshall
delivered the Opinion of the Court.
This action was brought by Gray, against Ayres and others, for an assault and tattery, which is alleged in the declaration in the usual form, and also with the additional charge, that the defendants tarred and feathered the plaintiff, and tore his clothes.
The defendants plea led two pleas of justification, to each of which the plaintiff demurred; and the demurrers *376 having been overruled, and judgment in bar renderet against the plaintiff, he has brought the case to this Court.
Private persons have a right to abate public nuisances, in general, without the aid or authority of any public pro ceeding. But superior rights may intervene, which may render such acts unlawful.
That which may be abated as a nuisance, without judicial proceedings , must he in itself a nuisance, or the inevitable cause of
Public-nuisances are of two classes, viz. physical, tangible objects; e. g. a house or fence in a public highway ; and those which, being merely moral, are intangible, e. g. the assembling & misconduct of persons at a disorderly house, the keeping of a tippling house, &c. It is the former that private persons may abate upon their own authority. The latter can only be suppressed by legal proceed - ings.
The destruction of a building in which disorderly persons assemble for unlawful purposes, cannot bo justified as the abatement of a nuisance ; nor can an assault upon one who re sists the destruction of his prop, erty, for such a causo, be justified; for it is not the home, but the disorderly conduct permitted in it, that constitutes the nuisance.
*376 Each of the pleas purports to answer the whole declaration, and as neither of them either denies or justifies the charge of tarring and feathering the plaintiff, each is on that account insufficient, and each, therefore, should have been adjudged bad on demurrer.
But the first plea is, in our opinion, fatally defective in another particular. It alleges, in substance, that the plaintiff occupied a house and close, near the town of Danville, which was the resort of felons, thieves, loafers and other dishonest, vicious and disorderly persons, by night and by day, and was so kept and allowed to be by him, and was, moreover, kept and used as a repository and receptacle of stolen goods, and was in fact, and had long been, a public nuisance: whereupon, the defendants, being citizens of Danville, and interested in the abatement of said nuisance, did, for the purpose of abating the same, go upon said close, and throw down the said house, and abate the said nuisance; and that, in so doing, they did necessarily and unavoidably lay their hands upon the plaintiff, and assault him, and, to some extent, beat, bruise and wound the plaintiff, who resisted and opposed the abatement &c., but to no greater extent than was actually necessary to effect the abatement, &c.
It is conceded that the facts stated in this plea, make out a case of a public nuisance. And the plea is sustained in argument, on the ground that individuals have a right to abate a public nuisance without the aid or authority of any public proceeding. But, although the existence of such a right may have been often admitted or asserted by commentators and judges, without adverting to any exception^ ór limitations, it is not therefore to be understood that the common law places it above all other rights, and disregards all other principles, in sustaining its exercise. It would be inconsistent with that regard which the common law pays to the peace of society and to the safety of individuals, to suppose that it has placed in the hands of private men, a *377 right so hazardous to these important interests, to be exercised at such time, in such manner, and to such extent, as they may choose, without any responsibility for such acts as they may find it necessary to do in accomplishing their object of abating a nuisance. If the immediate abatement of a nuisance be not absolutely necessary to the safety or convenience of the public, shall individuals be justified in the commission of homicide, or mayhem, or a flagrant battery, because the nuisance cannot be now abated without the commission of such acts? Or, if there be two modes of abating a public nuisance, shall individuals be justified in the commission of such acts, because they may become necessary for effecting the abatement in the mode which they have chosen?
A plea to an action for an assault Si battery, that pltf. kept a disorderly house —the receptacle of stolen goods &c. and that defendants entered tj,rew down th9 house, as a pub-lie nuisance, and, ;n s0 doing, ne-cessanlyandun-avoidably assual-ted the pltf. and jjeat°bruisedand wounded him— tnh°e ^ tion.
But it is not our object to enquire for, or to point out, the various limitations which the reason and justice of the common law may place upon the exercise of this i right. A single one, which is inherent in the rig|it itself, and is to be understood in every proposition which asserts it, is sufficient for the present purpose. The right is limited to the abatement of that which is a nuisance. Gates vs. Blincoe and others, 2 Dana, 160; or of that which necessarily causes the nuisance, and which cannot exist in its present location and condition, without being or , . . , , , , . , producing a nuisance. A house, or other substantial impediment, erected,in a public highway, is a nuisance i i i,. V which individuals may abate by pulling down or removing the substance which constitutes or causes the nui-sanee. Whether they may exercise this right under all circumstances, and at all hazards, need not be decided. So, the accumulation and stagnation of water occasioned by a dam thrown across a running stream, may be a public nuisance, and, so far as it is a nuisance, its remo*-val, or abatement, by individuals, by removing that which necessarily produces the nuisance, or so muph of it as does produce the nuisance, may be justified.
But, in the case before us, it was the use to which the house of the plaintiff was appropriated, and the practices which were allowed in it, that constituted a nuisance, and not the house itselfc which, neither in its location *378 nor its substance, nor in any matter inseparably connected with it,, constituted or produced any annoyance to the public. And, although the destruction of'the house might have been the- most effectual mode of suppressing the nuisance, yet, as the house was not itself a nuisance, nor necessarily the cause of one, its destruction was not a necessary means of abating the nuisance. And if the right of abating is to be confined to that which is the nuisance, or which actually produces, or must necessarily produce it, the right, upon the case made out in the plea, did not extend to the destruction of the house. It may be argued-, that there is no other mode in which individuals can, at their own pleasure, and by their own act, abate such a nuisance as that presented in the plea, but by pulling down the house in which it exists, or by forcing and keeping the occupant out of it; and that, as the reasoning and conclusion now adopted, would alike deny to individuals the right of pro- > seeding in either mode at their own will, and without» the sanction of the public authority, it negatives entirely the right of individuals to abate such a nuisance by force. And this negation of the right, is, in our opinion, ■not only a legitimate consequence of the position from which we have deduced it, but is in strict accordance with the most salutary and conservative principles of the law, which holds no private right in higher estimation than that of every individual to protect his person and property, and which subjects neither to invasion on mere private authority, except in those extraordinary cases -in which the right is manifest,, or in which the emergency is such as not to await an appeal to the laws.
There is- an obvious distinction between a physical or material nuisance, and a nuisance which consists merely in the immoral conduct and illegal practices of individuals within a particular house; and which may be called an unsubstantial Or a moral nuisance. The former is properly the subject of direct physical force, and cannot be abated or suppressed but by its application. The latter cannot be directly reached or affected by external ■force, and its suppression is more properly the subject oí *379 the- remedial and vindicatory powers of the law. In attempting to abate a physical or substantial nuisance by I force, nothing need be attacked save that which is itself the nuisance, or which cannot exist in its present physical condition, without producing a nuisanee: while in attempting, by force, to abate a moral or unsubstantial nuisance, something substantial must be assailed, the existence of which does not necessarily produce a nuisance ; for there is no physical or substantial thing which ■ cannot exist without producing a moral nuisance.
In these distinctions, and in the greater difficulty of, determining as to the existence of a moral nuisance, we think sufficient reason may be found for the conclusion that, although it may be, in general, true that individuals may abate a physical public nuisance by force, it fe not, in general, true that they may use force in abating a public nuisance which is not of a physical or substantial-nature; and therefore, it is not true, as a general proposition, that they have a right to abate a nuisance of this kind, or that, in doing so, they may pull down a house,, because it is the seat of the nuisance, or beat and wound a man, because he is one of the agents in producing it, or because he resists the destruction of his property.
It is an additional argument, that we find no case in-which the private right of abating a nuisance of this character, has been allowed as a justification for acts of violence upon the person or property of individuals. The nuisance described in this case, though more flagrant, is of the same character as that which is produced by the keeping of a tippling house, or other house in which disorderly or dishonest persons are encouraged to assemble, for the purpose of pursuing immoral and illegal practices; and although the house be, in- such cases, called a nuisance, has it ever been supposed that any and every individual who chooses may pull down- a tippling house, and, if the owner or occupant resist*, that he may commit personal violence, and even death, and be justified under an alleged right to abate public nuisances ? Such a doctrine would, in our opinion, be novel and dangerous, and we cannot admit that it is a part of the Laws of the land. ,
*380 Wherefore, the judgment is reversed, and the cause remanded, with instructions to sustain the demurrer to each of the pleas, and to render judgment thereon for the plaintiff, unless the defendants shall amend their pleadings.