### James Brown *vs.* Stephen Perkins & wife.

A private person cannot abate a common nuisance unless it obstructs his own right.

Intoxicating liquors are property, under the laws of the Commonwealth, and entitled to protection as such.

The *Sts.* of 1855, *cc.* 215, 405, do not make intoxicating liquors in themselves a common nuisance; and a building in which they are kept cannot be broken open and the liquors destroyed, as a nuisance, by those whose relations and friends frequent the building and obtain intoxicating liquors there.

ACTION OF TORT for breaking and entering the plaintiff's shop in Rockport, and carrying away and destroying a barrel of vinegar and other goods of the plaintiff.

The answer denied that the defendants entered the shop, or destroyed or carried away any goods; and alleged that the

building was kept for the sale of intoxicating liquors, and so was a public nuisance, and that a large number of persons assembled to abate the same, and destroyed and injured no article of merchandise, but only spirituous liquor unlawfully kept for sale, and did no other act, and used no more force, than was necessary to abate such nuisance.

At the trial before the chief justice, the plaintiff and others testified that he was a grocer, and kept a shop in Rockport; that on the 8th of July 1856, the defendants and others broke open his shop and destroyed various articles therein; and that there was no spirituous liquor there at the time.

The defendants introduced evidence tending to show that about three hundred women, some of whom were armed with hatchets, met, according to previous appointment, in a neighboring square and marched in a procession to the plaintiff's shop, and broke it open, and brought out and destroyed spirituous liquors which they found there; that on previous occasions persons had been seen coming out of the shop intoxicated; and that when the shop was broken open Perkins was on the opposite side of the street, and his wife was not there at all; and there was conflicting evidence as to the part taken by her in the subsequent destruction of the property. One of the defendants' witnesses testified: " There were many men there, and almost all the women in Rockport; all who could walk or move on crutches. All the men appeared to be approving, except the rumsellers; I heard no objection. The selectmen, ministers, deacons, policemen were present; none of them forbade what was done, but all was peace and harmony. They appeared to be very happy, and the shouts came up from the gentlemen. The justices of the peace were there; everything that could walk. We determined to carry it through and destroy all the liquor."

So much of the judge's instructions as concerned the points decided by the full court was reported by him as follows:

" The most material question is, whether this proceeding was justifiable upon the grounds stated and relied on. That justification is, that by statute all intoxicating liquors kept for sale,

and the vessels and implements actually used in selling and keeping the same, contrary to the provisions of that act, (*St.* 1855, *c.* 215, § 37,) are declared to be common nuisances and are to be regarded and treated as such; and that by another statute (*St.* 1855, *c.* 405) all buildings, places or tenements, used as houses of ill fame, resorted to for prostitution, lewdness, or for illegal gaming, or used for the illegal keeping or sale of intoxicating liquors, are declared to be common nuisances, and are to be regarded and treated as such.

" Upon this three questions arise: 1st. Whether all persons, members of the community, have a lawful right to destroy intoxicating liquor thus kept, by way of abatement of a com mon nuisance ? 2d. Whether for this purpose they have a right to use force to break open the place where it is so kept, if the nuisance cannot be reached and abated otherwise ? 3d. Is it justifiable for a large number of persons to combine and agree together to take and destroy such intoxicating liquor by force, and to use force in breaking open such a shop, in order to come at and get possession of the liquor to be destroyed ?

" Upon these questions I was of opinion and instructed the jury as follows: 1st. That intoxicating liquors kept for sale, with the vessels containing them, and articles used in the sale, being declared by law to be a common nuisance, it is lawful for any person to destroy them, by way of abatement of a common nuisance, and that it is the exercise of a common and lawful right. 2d. That if kept in such a shop, not a dwelling-house, locked or otherwise closed, it is justifiable to use force, but no more force than is necessary to reach the liquor and vessels, if it cannot be come at otherwise. 3d. That if the combination or conspiracy of a large number of persons extends no further than to take and destroy intoxicating liquor and the vessels, and to use no unnecessary force, the fact that such combination is entered into by a large number of persons to act together, in doing that and no more, would not take away the justification they would have, if done by one or a few of them.

" But the jury were cautioned that this was a dangerous power, to be construed under very strict conditions; comment

was made upon the danger of permitting people to take the law into their own hands, alluding to lynch law, vigilance committees, etc., leading to resistance, to riots, bloodshed and violence, destruction to the peace of a civilized community ; that as a general rule private persons must rely upon the law for their protection and the redress of grievances, and if the law is in any respect inoperative and ineffectual, it is the province of the legislature to amend it.

" The restrictions under which this power can be lawfully exercised, the jury were instructed to be as follows : 1st. The power claimed by the defendants is a power conferred by law, and not by license or authority conferred by private persons, and must therefore be construed strictly, and if they exceed their authority, they are trespassers *ab initio*, this justification wholly fails, and the plaintiff is entitled to recover for all the damage sustained ; so, if they break open a shop where no intoxicating liquor is kept, or, if kept, if none is kept for sale, they do it at their peril ; and if none such is found, the justification fails ; so, if after entering they do unlawful acts, they are trespassers *ab initio*. 2d. If any more force was used than was necessary, or any damage done to the building or to any articles in the building, beyond that of taking and destroying the intoxicating liquor kept for sale and the vessels which contained it, then the parties so acting were trespassers *ab initio*, and the justification is not established.

" Under these views the evidence was briefly reviewed and submitted to the jury, upon the several questions of fact above stated ; especially whether any unnecessary force was used, in breaking open the shop, without first requesting the owner to unlock it ; or whether any unlawful acts were done by the party after entering the shop, either to the building or articles in it, and whether a barrel of vinegar, or any article other than intoxicating liquor and the vessels, was taken away or damaged."

The jury returned a verdict for the defendants ; and the plaintiff moved for a new trial, on the ground that the jury were misdirected in matters of law ; and this motion was reserved for the consideration of the whole court.

*O. P. Lord & J. W. Perry,* for the plaintiff. The right of private persons to abate a common nuisance is confined to removing a physical nuisance, which obstructs their exercise of some of their own rights, or which endangers their peace, happiness, health or lives to so extraordinary a degree that the action of the law cannot be invoked for their protection. This right is confined to abating that which is the nuisance, and never embraces the right to destroy property which is made or becomes a common nuisance merely by reason of some immoral or illegal use to which it is put or intended to be put by its owner. *Hopkins' v. Crombie,* 4 N. H. 520. *Graves v. Shattuck,* 35 N. H. 257. *Gray v. Ayres,* 7 Dana, 375. *State v. Paul,* 5 R. I. 185. The principal cases in which the right has been asserted have been of public physical nuisances, such as obstructions of a highway or navigable stream. *James v. Hayward,* Cro. Car. 184. *Lodie v. Arnold,* 2 Salk. 458. *Penruddock's case,* 5 Co. 101. *Baten's case,* 9 Co. 53. *Wales v. Stetson,* 2 Mass. 143. *Arundel v. M'Culloch,* 10 Mass. 70. *Garey v. Ellis,* 1 Cush. 307. In *Meeker v. Van Rensselaer,* 15 Wend. 397, which is the strongest case in favor of the right of individuals to abate a public nuisance, the thing abated was a dwelling-house, cut up into small apartments, inhabited by a great number of poor people, in a filthy condition, and dangerous to the health and life of the neighborhood.

No man has a right to remedy a wrong and execute the law himself. " Taking the law into one's own hands " has the same signification as abating a nuisance by private individuals, and means simply that a party may relieve himself against peril. The fallacy and confusion arise from not distinguishing the exercise of certain natural rights from the execution of certain legal remedies.

The right of private individuals to abate common nuisances has the same origin, the same extent, and the same limitations, as the right of selfdefence. If an individual is attacked by an assassin, he may in defence of his person repel the attack and slay the assaulter, and the law will excuse, and not punish, the homicide. This right of selfdefence is not given by the law

but by nature. The individual exercising it is not administer-ing a legal remedy, but the law excuses or justifies him because under the circumstances of a sudden attack it cannot otherwise protect him. And if a public or private nuisance so imperils a man's life, limbs, health, happiness, liberty or property, or so obstructs him in the exercise and enjoyment of his undoubted legal rights, that it is not safe and reasonable for him to invoke the process of the law to abate the nuisance, he may, on the principles of selfdefence, so far remove and abate the nuisance as to relieve himself from immediate peril and his legal rights from dangerous obstructions, and the law will excuse or justify him so far in abating the nuisance. This is what is meant by the phrase, so often found in elementary text books and judicial reports, that "private individuals may abate a common nui-sance," as a careful study of all the cases will show. This ex-planation places the matter in harmony with the whole body of our law; any other exposition introduces an inexplicable and dangerous anomaly into our system of jurisprudence.

By the *St.* of 1855, *c.* 215, § 37, "all intoxicating liquors kept for sale, and the implements and vessels actually used in selling and keeping the same, contrary to the provisions of this act," as by *St.* 1855, *c.* 405, § 1, "all buildings, places or tenements used for the illegal sale or keeping of intoxicating liquors," are "de-clared to be common nuisances, and are to be regarded and treated as such;" that is to say, so regarded by the law, and treated as such by those who have authority by law. The same statute, that declares liquors kept for sale to be common nuisances, also points out the method of proceeding against them, the warrants to be issued, the seizure to be made, the trial to be had, and the destruction that is to follow if a condemnation is secured. When the statute declares a thing to be a common nuisance, and at the same time points out the particular manner in which it shall be proceeded against, it cannot be imagined that the legislature intended to give every man, woman and child in the Commonwealth the right to seize and destroy the obnoxious property whenever and wherever it can be found. No such alarming or dangerous

inference ought to be sanctioned by any court.   *State* v. *Paul*,
5 R. I. 185.

If the legislature intended that such results should follow
from the statute declaring liquors kept for sale common nui-
sances, then the statute is unconstitutional and void; for if the
destruction of the liquors is in the nature of a punishment or
penalty, no man can be punished except upon charge made and
trial had according to law; and if the destruction of the liquors
is in the nature of a forfeiture, no man can be deprived of his
property except by the judgment of his peers and the law of
the land.

Intoxicating liquors are not a nuisance ; they are property, en-
titled to protection as property, may be the subject of larceny,
and no man can be deprived of them without due process of
law, including trial by jury.   *Fisher* v. *McGirr*, 1 Gray, 1.
*Commonwealth* v. *Coffee*, 9 Gray, 139.   *Arthur* v. *Flanders*, 10
Gray, 107.   Intoxicating liquors in the packages in which they
were imported, or held for consumption, or to be given broad-
cast through the Commonwealth, are not a nuisance ; nor is
drinking them or giving them to another to drink; but it is a
necessary element that they should be kept with intention to
sell them illegally.   It is this motive or intention of the mind,
which makes the nuisance.   In the case of buildings, there is a
use prohibited; but here it is only the condition of mind of the
party who holds the liquor.   There are kinds of nuisances which
are impalpable, and cannot be abated by process of law, and in
such case the only judgment can be for the punishment of the
offender.   Here the intent is the thing ; the law itself cannot
abate the intent.   A man may be indicted, notwithstanding the
nuisance has been abated.   If a man, having been punished
by an individual, can be punished again by the public, what be-
comes of the clause of the Constitution, which prohibits his being
tried twice ?   This shows that abatement by an individual is
not in execution of the law, but to relieve himself from impend-
ing peril, and he can justify himself only on that ground.
There was nothing here which offended or injured any indi-
vidual, or put him in such peril that he could not invoke and

await the ordinary processes and protection of the law, and of the courts administering the law.

It is only under some circumstances that a person can abate a nuisance, even where it does injure himself. He cannot pull down the house where an unlawful trade is carried on. The unlawful trade only is abated by the judgment of the court; the innocent house remains the property of its owner. *Rex* v. *Pappineau*, 2 Stra. 686. If a man takes down a fence which obstructs a highway, he cannot destroy or burn the fence. What are nuisances is a question of law, either of common law or of statute. At common law they are the exercise of particular trades, acts of public indecency, actual breaches of the public peace, keeping a disorderly house or bawdy house, or a dangerous animal, or exposing a person having a dangerous disease. Bouvier's Law Dict. " Nuisance."

If I leave my horse standing in the street an unreasonable length of time, it becomes a nuisance, and may be removed by any person whom it interrupts in his use of the highway. But suppose I resist, can he use all force necessary, even to killing me, if I resist to death ? Can a man abate a nuisance by a nuisance ? Any assault of the person calculated to induce a breach of the peace is a nuisance. What could be more so than this assembly of three hundred women with hatchets, surrounded and supported by a force which should overawe all resistance ? If the law gives no protection to a man and his property, how long will it be before he will protect himself and his property except against the judgment of his peers and the law of the land ?

It was never heard of that a bawdy house or the inmates of a bawdy house could be abated by an individual. If it can, what is there to forbid any body of persons going into such a house and preventing its being converted to the unlawful purpose ? *Gray* v. *Ayres*, 7 Dana, 375. That is much easier than this; for here it is only the intent of the keeper, which you can only reach by knocking his brains out. The liquors are not the nuisance; why therefore destroy the liquors ? Some of the authorities go to the point that a dangerous animal, while

doing an injury, may be destroyed, but not while not doing one.

Whenever that which is a common nuisance obstructs, injures or annoys a person under such circumstances that he cannot wait for the slow process of the law for his remedy, he may do that which relieves him from the impending peril, and which results in an abatement of the nuisance, but which is not technically an abatement of the nuisance. If we go farther than this, and say that any person may go beyond what the law authorizes him to do, and himself execute the law; then we are under a government of men and not of laws; and the legislative, instead of entrusting the execution of the laws to the executive and judicial departments, makes every individual to be judge, jury and executioner in his own case. A nuisance is not different from any other illegal act; a person injured may not execute the law, but he may relieve himself from impending peril. Is it a greater offence to commit a nuisance than to murder a man? Could the legislature say in case of murder, that any one might make hot pursuit and kill the offender? Yet he would be doing no more than the law would do.

Suppose a man has a quantity of imported liquors in a storehouse, and has broken bulk of each pipe, and is going away, and says he shall sell the liquors. Here is a nuisance. What is to be abated? Not the liquor. Not the building. There is nothing palpable to be abated; the nuisance is only the intent.

The distinction made in the instructions to the jury between the building and the vessels containing the liquor cannot be maintained.

*S. H. Phillips & R. S. Rantoul,* for the defendants. The plaintiff's shop was a common nuisance at common law. Such is any trade which is offensive and renders the enjoyment of property and life uncomfortable, although not dangerous to health. 3 Bl. Com. 216–220. 4 Bl. Com. 167. 2 Kent Com. (6th ed.) 340. *Rex* v. *White,* 1 Bur. 337. *Rex* v. *Higginson,* 2 Bur. 1232. *The King* v. *Moore,* 3 B. & Ad. 184. *Brady* v. *Weeks,* 3 Barb. 157. *Cheatham* v. *Shearon,* 1 Swan, 213. A powder house, a bowling alley and a rope dancer have been held

under some circumstances to be nuisances. *State* v. *Haines,* 30 Maine, 65. *Brown* v. *Carpenter,* 26 Verm. 638. *State* v. *Bertheol,* 6 Blackf. 474. A large and furious dog is a common nuisance, and he who destroys him is a public benefactor. *Tanner* v. *Albion,* 5 Hill, 121. *Howard* v. *Lee,* 3 Sandf. 281. *Weld* v. *Hornby,* 7 East, 195. *Hall's case,* 1 Mod. 76. The rule is *sic utere tuo ut alienum non lædas.* If not a common nuisance at common law, the plaintiff's shop was made such by statute. *St.* 1855, *c.* 405, § 1. If not a common nuisance, it was a close containing a nuisance, and might be broken and entered if necessary to abate the nuisance ; and this before actual damages accruing ; and without notice to the owner. 1 Russell on Crimes, (7th Amer. ed.) 267, 268, & cases cited. Com. Dig. Action upon the Case for a Nuisance, D. *Rex* v. *Rosewell,* 2 Salk. 459. *Hall's case,* 1 Mod. 76. *Penruddock's case,* 5 Co. 101. *Jones* v. *Williams,* 11 M. & W. 181. *Arundel* v. *M' Culloch,* 10 Mass. 71. *Garey* v. *Ellis,* 1 Cush. 307. *Lancaster Turnpike* v. *Rogers,* 2 Barr, 114. 3 Archb. Crim. Pl. (Waterman's ed.) 588, note.

The liquors, implements and vessels found in the plaintiff's shop and destroyed were common nuisances, either at common law or under *St.* 1855, *c.* 215, § 37. Or they were at least private nuisances to these defendants and others. A nuisance may be abated by any person suffering injury therefrom. A common nuisance injures everybody and everybody may abate it. *Rex* v. *Wilcox,* 2 Salk. 458. *Rex* v. *Rosewell,* 2 Salk. 459. *Baten's case,* 9 Co. 53. *Penruddock's case,* 5 Co. 101. Com. Dig. Action upon the Case for a Nuisance, B. *Cooper* v. *Marshall,* 1 Bur. 263. *Davies* v. *Williams,* 16 Ad. & El. N. R. 546. 3 Bl. Com. 5. 1 Hawk. *c.* 75, § 12. Hale *de Portibus Maris,* pt. 2, *c.* 7. 1 Bishop on Crim. Law, § 700. *Wales* v. *Stetson,* 2 Mass. 146. *Arundel* v. *Mc Culloch* and *Garey* v. *Ellis,* above cited. *Great Falls Co.* v. *Worster,* 15 N. H. 412. *Low* v. *Knowlton,* 26 Maine, 128. *Hart* v. *Albany,* 9 Wend. 571. *Wetmore* v. *Tracy,* 14 Wend. 250. *Meeker* v. *Van Rensselaer,* 15 Wend. 397.

This right in the individual to abate by his own act is not matter of license or authority conferred by private persons, but is the proper remedy provided by law for certain wrongs. Such

remedies are the rights of selfdefence, of a sheriff to arrest without warrant, of a citizen to prevent felony and suppress riot, of a citizen to abate a nuisance which injures him, of every citizen to abate a common nuisance. 3 Archb. Crim. Pl. 589, note. 3 Bl. Com. 5, 216. *Murray* v. *Hoboken Land Co.* 18 How. 283. The party injured may abate without notice. *Penruddock's case, Jones* v. *Williams* and Com. Dig., above cited. Special damage to the defendants was proved here.

It is not necessary to use as little force, or do as little damage as possible. The purpose of the law is not to be defeated by trifles. But no excess will be tolerated. Bac. Ab. Nuisances, C. *Lodie* v. *Arnold,* 2 Salk. 459. Com. Dig. Action upon the Case for a Nuisance, D. *Davies* v. *Williams,* 16 Ad. & El. N. R. 546. The destruction of carcases, of obscene books and prints, of mill-dams, of gates upon the highway, and of buildings, involves in each case the loss of useful and harmless matter.

The right of individuals to abate any particular nuisance is not restricted nor modified by special legislation in regard to that nuisance. *Commonwealth* v. *Ruggles,* 10 Mass. 391. *Great Falls Co.* v. *Worster,* 15 N. H. 412. *State* v. *Moffett,* 1 Greene, Iowa, 237. *Baten's case,* 9 Co. 53.

The right of individuals to abate includes the right to destroy the liquors; because the statute prescribes no other course when it makes them a nuisance, and the common law does not require individuals to preserve the liquors at their own expense for the benefit of the owner; and because their value in view of the purposes of the law is too trifling to be regarded. Obstructions in a highway or navigable river are to be summarily got rid of for the benefit of the public, not carefully removed for the benefit of the owner. Houses which might have been removed, or the materials of which might have been saved, have been both as public and private nuisances, wholly demolished. *Davies* v. *Williams, Meeker* v. *Van Rennsselaer,* and *Garey* v. *Ellis,* before cited.

The law will not help a man to protect property which he so abuses, to the injury of others, and the impediment of common right. And in some exigencies it requires a sacrifice of indi-

vidual interest to the common good which makes the relative value of property wholly subordinate.

SHAW, C. J.*   This is an action for breaking and entering the plaintiff's shop, and destroying various articles of property.

The defendants, denying the facts, and putting the plaintiff to proof, insist that if it is proved that they were chargeable with the breaking and entering, it was justifiable by law, on the ground that the shop was a place used for the sale of spirituous liquors, and so was declared to be a nuisance; that they had a right to abate the nuisance, and for that purpose to break and enter the shop, as the proof shows that it was done; that the shop contained spirituous liquors kept for sale; that the so keeping them was a nuisance by statute; that they had a right to enter by force and destroy them ; that they entered for that purpose and destroyed such articles, and did no more damage than was necessary for that purpose.

A great many points were raised in the report, and argued, upon which the court have not passed ; they are all passed over now for the purpose of coming to the main points which are decisive of the case.

The judge who sat at the trial stated that he ruled the law and directed the jury as stated in the report, subject to the opinion of the whole court, and when many other points were raised, he stated that it might be more convenient to report the whole case, so far as controverted points were presented, for the consideration of the whole court; and this, it was understood, was assented to by counsel.

Passing over all questions as to the plaintiff's case, and coming to the justification set forth in the answer, the court are of opinion, after argument, that the ruling and instructions to the jury were not correct in matter of law.

1. The court are of opinion that spirituous liquors are not, of themselves, a common nuisance, but the act of keeping them for sale by statute creates a nuisance; and the only mode in

---

* This statement of the decision was drawn up by the chief justice to guide the new trial. His death prevented the writing out of a fuller opinion.

which they can be lawfully destroyed is the one directed by statute, for the seizure by warrant, bringing them before a magistrate, and giving the owner of the property an opportunity to defend his right to it. Therefore it is not lawful for any person to destroy them by way of abatement of a common nuisance, and *a fortiori* not lawful to use force for that purpose.

2. It is not lawful by the common law for any and all persons to abate a common nuisance, merely because it is a common nuisance, though the doctrine may have been sometimes stated in terms so general as to give countenance to this supposition. This right and power is never entrusted to individuals in general, without process of law, by way of vindicating the public right, but solely for the relief of a party whose right is obstructed by such nuisance.

3. If such were intended to be made the law by force of the statute, it would be contrary to the provisions of the Constitution, which directs that no man's property can be taken from him without compensation, except by the judgment of his peers or the law of the land ; and no person can be twice punished for the same offence. And it is clear that under the statutes spirituous liquors are property, and entitled to protection as such. The power of abatement of a public or common nuisance does not place the penal law of the Commonwealth in private hands.

4. The true theory of abatement of nuisance is that an individual citizen may abate a private nuisance injurious to him, when he could also bring an action ; and also, when a common nuisance obstructs his individual right, he may remove it to enable him to enjoy that right, and he cannot be called in question for so doing. As in the case of the obstruction across a highway, and an unauthorized bridge over a navigable watercourse, if he has occasion to use it, he may remove it by way of abatement. But this would not justify strangers, being inhabitants of other parts of the Commonwealth, having no such occasion to use it, to do the same. Some of the earlier cases, perhaps, in laying down the general proposition that private subjects may abate a common nuisance, did not expressly

mark this distinction; but we think, upon the authority of modern cases, where the distinctions are more accurately made, and upon principle, this is the true rule of law. *Lonsdale* v. *Nelson,* 2 B. & C. 311, 312, and 3 D. & R. 566, 567. *Mayor &c. of Colchester* v. *Brooke,* 7 Ad. & El. N. R. 376, 377. *Gray* v. *Ayres,* 7 Dana, 375. *State* v. *Paul,* 5 R. I. 185.

5. As it is the use of a building, or the keeping of spirituous liquors in it, which in general constitutes the nuisance, the abatement consists in putting a stop to such use.

6. The keeping of a building for the sale of intoxicating liquors, if a nuisance at all, is exclusively a common nuisance; and the fact that the husbands, wives, children or servants of any person do frequent such a place and get intoxicating liquor there, does not make it a special nuisance or injury to their private rights, so as to authorize and justify such persons in breaking into the shop or building where it is thus sold, and destroying the liquor there found, and the vessels in which it may be kept; but it can only be prosecuted as a public or common nuisance in the mode prescribed by law.

Upon these grounds, without reference to others, which may be reported in detail hereafter, the court are of opinion that the verdict for the defendants must be set aside and a

*New trial had.*