## Walter v. Louisville Railway Company.

(Decided November 20, 1912.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

1. Highway—Obstruction in—Public Nuisance—When Party Hindered May Abate.—If one places an obstruction in a public highway, anyone who is incommoded thereby, may remove it; but, unless he has occasion to make use of the highway, he must leave the public injury to be redressed by the public authorities.

It is the existence of an emergency which justifies the interference of the individual; and, generally speaking, whenever a public nuisance obstructs the exercise of a private right, the party hindered may abate the same, exercising due care in doing so.

2.  Contributory Negligence—Absence of Evidence—When Instruction Upon Unnecessary.—Where there is no evidence tending to show the plaintiff was guilty of contributory negligence, no instruction should be given upon that subject; but, if such an instruction is given, and it is apparent that the verdict was not rested upon such instruction, the judgment will not be reversed on that account, where it is apparent the instruction was not prejudicial.

3.  Negligence—Where One Not Liable for Injury.—Where the plaintiff left his horse and wagon standing upon the street unattended, and the defendant's servant led the horse and wagon across the street in order to permit defendant's snow play to pass upon its track, the defendant was not liable for an injury to the wagon, unless its servant was negligent in removing the wagon.

4.  Verdict—When Sufficiently Definite.—In a suit for damages, a verdict which reads, "We the jury, do not find the defendant guilty," was sufficiently definite and specific to authorize the court to enter a judgment thereon in behalf of the defendant.

5.  Juror—When Not Disqualified by Reason of Kinship.—A juror is not always disqualified in a suit by or against a corporation merely because he is related to some of its stockholders. If the interest of the stockholder is so small as to be infinitesimal, and not to amount to a real interest in the controversy; or, if the juror was ignorant of the fact that his relative was a stockholder, the kinsman will not be disqualified as a juror.

6.  Juror—Former Employment by Corporation—Qualification.—The fact that a juror and his two brothers had theretofore been employed by the defendant corporation, did not disqualify the juror from subsequently serving in a suit for damages against the corporation.

O'DOHERTY & YONTZ for appellant.

FAIRLEIGH, STRAUS & FAIRLEIGH, ALFRED SELLIGMAN and HOWARD B. LEE for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

On February 17, 1910, appellant, while acting as driver of a delivery wagon for the Great Atlantic & Pacific Tea Company, stopped the wagon on the south side of Walnut street, in Louisville, between 21st and 22nd streets, for the purpose of making a delivery of

goods. He left his wagon unattended on the street, and disappeared. In his absence defendant's snow plow approached, going eastwardly, and clearing the track of a heavy snow. Seeing that the snow plow could not pass the wagon in the position it was standing, Shelton, one of the defendant's men on the plow, got down, took hold of the bridle of the horse, and led the horse and wagon from the south side of the street across to the north side of the street, where he left them. In crossing the street Shelton passed over or through one, and possibly two, piles or ridges of snow that had been made by the plow in throwing the snow away from the car tracks, upon either side. When plaintiff came out of the house where he had delivered the merchandise, and saw his wagon on the opposite side of the street, he crossed over and got into it; but when he started, the king bolt which held the front axle to the body of the wagon, broke, and plaintiff was thrown to the ground, causing a fracture of his shoulder. He brought this action for damages, alleging that his injury was caused by the gross negligence of defendant's agents and servants in moving the wagon, whereby they broke the king bolt. The case having been tried out, the jury returned this verdict: "We, the jury, do not find the defendant guilty;" and, the court having entered a judgment for the defendant upon the verdict as returned, the plaintiff prosecutes this appeal.

The following grounds are relied upon for a reversal; (1) that the court erred in giving instruction No. 1; (2) in instructing upon contributory negligence; (3) in refusing to give an instruction asked by the plaintiff; (4) that the verdict was not sufficient to support the judgment entered in defendant's favor; and, (5) the misconduct of juror Gunther.

1. Instruction No. 1 given by the court, reads as follows:

"If the jury believe from the evidence that the defendant's agent, Shelton, negligently moved the wagon mentioned in the evidence and thereby broke the king bolt or caused it to break, and thereby caused the wagon to fall apart, and that the plaintiff was thereby injured, then the law is for the plaintiff, and the jury should so find, unless they believe from the evidence that the plain-

tiff was himself negligent as submitted in the third instruction.''

The second instruction is the converse of the first; and, as there is no criticism of the other instructions, it is unnecessary to further notice them.

As a substitute for Instruction No. 1, the plaintiff asked the court to give the following instruction, to-wit:

''The court instructs the jury that it appears from the evidence in this case that the defendant's agent on the occasion in the evidence referred to, took posssssion and control of the horse and wagon in the evidence referred to, without the plaintiff's consent and in his absence and moved it from the south to the north side of Walnut street; if, therefore, the jury shall believe from the evidence that while the wagon was in the possession and under the control of the defendant's agent in moving it across Walnut street, it was injured, and that by reason of the injuries so inflicted upon it the wagon pulled apart when the plaintiff boarded the same and attempted to drive it from the point to which it had been taken by the defendant's said agent, and the plaintiff was thereby thrown or caused to fall from the wagon and was thereby injured, the law is for the plaintiff and the jury should so find.''

Appellant's theory of the case as presented by the instruction offered was, that Shelton unlawfully or tortiously took possession of appellant's horse and wagon, without appellant's consent; and, if he injured the wagon while moving it, appellee was liable, absolutely, and must answer for the injury whether negligent, or not. Appellant's counsel likens this case to a case where one unlawfully or tortiously obtains possession of another's boat and loses it in a storm, and insists, that in such a case, no matter how careful he may have been in its management, and no matter if the loss was occasioned by the act of God, nevertheless, because of the tortious and unlawful possession, he will be liable at all events. In other words, a tortious departure from the terms of the contract by misappropriating the property, or misusing it, renders the bailee liable. Van Zile on ''Bailments and Carriers,'' section 55.

There can be no doubt that a bailee is liable in tort for injury to property bailed, occurring during a use

of it by him, or by others with his consent, which was neither expressly nor impliedly authorized by the contract of bailment, even though such injury was the result of accident, and not of negligence in the manner in which the property was used. Palmer v. Mayo, 80 Conn., 853; 15 L. R. A. (N. S.), 429.

In making this contention, however, we think appellant has misconceived the legal effect of appellee's act in removing the wagon to a position across the street. Shelton and his co-employes upon the car which drew the snow plow, contended that the plow could not pass appellant's wagon by reason of the position in which it stood, and that he only removed it for the purpose of enabling the snow plow to proceed on its journey, and continue its work. On the other hand, appellant attempted to show that the car could have passed by merely drawing in the plow, which could have been done by a simple use of the machinery. However that may have been, the presence or absence of sufficient room for the plow to pass cannot affect the rights of the parties, as we understand the law of the case.

In defining a nuisance, and in saying who may abate it, Blackstone says:

"Whatsoever unlawfully annoys or doth damage to another is a nuisance, and such nuisance may be abated, that is, taken away or removed, by the party aggrieved thereby, so as he commits no riot in the doing of it. If a new gate be erected across the public highway, which is a *common* nuisance, any one of the king's subjects passing that way may cut it down and destroy it. And the reason why the law allows this private and summary method of doing one's self justice, is because injuries of this kind, which obstruct or annoy such things as are of daily convenience and use, require an immediate remedy, and cannot wait for the slow progress of the ordinary forms of justice." (3 Com., 5.)

And, in a note by Lewis to the foregoing text, it is said:

"If a house be built across a highway, any person may pull it down; and it is said that he need not observe particular care in abating it, so as to prevent injury to the materials. And though a gate, illegally fastened, may have been opened without cutting it down, yet the cutting would be lawful. However, it is a general rule

that the abatement must be limited by its necessity, and no wanton or unnecessary injury must be committed. (2 Salk., 458.)''

And in his note to 4th Blackstone's Com., 167, Lewis further says:

''Independently of any legal proceedings, it appears that any person may lawfully abate a public nuisance, at least if it be placed in the middle of a highway and obstruct the passage of his majesty's subjects (Hawk., b. 1, c. 75, S. 12); but though a party may remove the nuisance, yet he cannot remove the materials or convert them to his own use (Dalt. c. 50); and so much of the thing only as causes the nuisance ought to be removed, as, if a house is built too high, only so much of it as is too high should be pulled down. 9 Rep., 53, God., 221, 2 Stra., 686.''

The rule is, that if one places an obstruction in a public street, anyone who is incommoded thereby may remove it; but, unless he has occasion to make use of the highway, he must leave the public injury to be redressed by the public authorities. Gates v. Blincoe, 2 Dana, 158, 26 Am. Dec., 440; Gray v. Ayers, 7 Dana, 375, 32 Am. Dec., 107. It is the existence of an emergency which justifies the interference of the individual; and, generally speaking, whenever a public nuisance obstructs the exercise of a private right, the party hindered may abate the same, exercising due care in doing so. Instruction No. 1, of which complaint is made, followed the rule by recognizing appellee's right to move the wagon out of the way of the street car, and also by recognizing appellant's right to recover, if Shelton was so negligent in removing the wagon as to break the king bolt, and thereby cause the wagon to fall apart and injure appellant.

2. It is insisted, however, that the court erred in instructing the jury upon the subject of contributory negligence, as it did in giving instruction No. 1, when there was no evidence of any negligence upon the part of plaintiff. While we agree with appellant that there was no negligence shown upon appellant's part, nevertheless, if the instruction in this respect could not have misled the jury, there is no reversible error.

In Shellman v. Louisville Railway Co., 147 Ky., 526, we said:

"Complaint is also made because the court gave an instruction on contributory negligence. Under the evidence introduced none should have been given, as there was no evidence tending to show that, in getting into the car, the plaintiff was guilty of any negligence. It is apparent that the verdict of the jury was not rested upon this instruction, and we have repeatedly held that, although an erroneous instruction is given, the case would not be reversed on that account where it was apparent that it was not prejudicial. Louisville Ry. Co. v. Byer's Admr., 130 Ky., 442; C. & O. Ry. Co. v. Ward's Admr., 145 Ky., 736."

And, in the earlier case of Bennett v. Louisville Ry. Co., 122 Ky., 61, we used similar language, as follows:

"Instruction No. 3 complained of by appellant is an instruction in the usual form upon the subject of contributory neglect. The objection to this instruction is that there was no evidence upon which to base it. It is true that there was a bare scintilla of evidence, if any, to authorize it. It is a doubtful question as to whether or not it should have been given, but in our opinion the giving of it did not prejudice the substantial rights of the appellant."

In view of the fact that upon the trial the whole case was made to turn upon the question of Shelton's negligence in removing the wagon across the street, we are clearly of opinion that the question of appellant's contributory negligence was an insignificant circumstance, and had no effect whatever upon the verdict. The form of the verdict shows this to be so, beyond any question. The instruction upon contributory negligence should not have been given, but it was not, under the circumstances, prejudicial to appellant's substantial rights.

3. We cannot approve appellant's legal proposition, contained in the rejected instruction, to the effect that appellee was liable for moving the wagon, whether he acted negligently, or otherwise. In support of the proposition appellant relies upon Hawkins v. Phythian, 8 B. M., 515; Jackson v. Robinson, 18 B. M., 1; Kennedy v. Ashcraft, 4 Bush, 531; and Palmer v. Mayo, *supra;* but an examination of these cases clearly shows they do not sustain appellant's proposition, and are not in conflict with the rule above laid down.

It should be borne in mind that appellant left his horse and wagon unattended upon the street, and that

appellee's servants had no reason to believe that he would soon return. They found the wagon obstructing the highway, and there being no immediate prospect of appellant's return, they had the right to lead the horse and wagon out of the way in order that the snow car might pass. A street railway company has the right to remove ice and snow from its tracks so as to enable it to exercise its franchise, and it cannot excuse its failure to perform its duty to operate, on the ground that it has been prevented by an accumulation of snow upon its track, or the presence of an abatable nuisance in the highway.

4. The verdict reads, "We, the jury, do not find the defendant guilty." Appellant insists that the legal significance of this verdict is, that the jury were unable to agree upon a verdict against the defendant; or, to state it differently, appellant contends there was a hung jury, although neither the jury nor the court was aware of it. It is insisted that no other significance can attach to the finding, unless the court imports into it, language and meaning not to be found therein. A verdict is the answer of a jury given to the court concerning the matters of fact committed to their trial and examination; it makes no precedent, and settles nothing but the immediate controversy to which it relates. If it decides the question in issue in such a way as to enable the court intelligently to base a judgment thereon, it is sufficient in form.

In Miller v. Shackelford, 4 Dana, 280, the court said:

"All that is requisite in a verdict general or special, is that it shall contain such a finding as will enable the court to pronounce judgment upon it, for one party or the other. If, when taken altogether it responds to the whole issue, it is enough. The jury may submit for the opinion of the court, but a single question arising on a part of the facts of the case; and if they state the facts on which the question arises, and show that their verdict is for one or the other party, as the opinion of the court may be upon the facts submitted to it, the verdict is good. 'Where the jury have no doubts, the court will have none.' 7 Bacon Ab. Pa., 7, title 'E.'"

Applying the foregoing rule to the verdict before us, it cannot be said that the jury had any doubt upon the subject of appellee's liability. The essential issue presented to the jury was that of negligence upon the part

of Shelton, appellee's servant, and in considering that question it is but using the ordinary language of the street to say that he was guilty or not guilty of the negligence charged against him. Therefore, when the jury said it did not find the defendant guilty, it clearly meant it was not guilty of negligence under instruction No. 1, which had predicated appellant's right to recover upon the negligence of the appellee. P., C., C. & St. L. Ry. Co. v. Darlington's Admr., 129 Ky., 269, is directly in point.

Moreover, appellant did not object to the form of the verdict at the time it was rendered, but treated it as sufficient for the purposes of the case, and permitted the jury to be discharged without objection. If appellant had desired to raise the question of the sufficiency of the form of the verdict, he should have done so at the time it was returned, in order that the court might, as would have been its duty, have directed the jury to correct the form of its verdict so as to conform to the law.

In Williams v. Commonwealth, 140 Ky., 35, the verdict read, "We the jury do agree and find the defendant $150.00 and six months in jail and work;" and it was contended that no judgment could be entered thereon because it failed to find the defendant guilty. But, in overruling that contention, and holding the verdict sufficient, the court said:

"Under the instructions of the court the jury could not fix appellant's punishment without finding him guilty. Therefore, when they in their verdict fixed his punishment at a fine and imprisonment, they in effect found him guilty as charged in the indictment. The rule is well settled in this State that, if a verdict is not as specific as desired, the correct practice is then and there, before the jury is discharged, to have them reform it. Allowing the jury to be discharged without objection and without motion to have them correct or extend their verdict, will be deemed a waiver of formal defects in it. And it must then affirmatively appear that the substantial rights of the accused have been prejudiced by the informality. The presumption will not be indulged that his rights were prejudiced. (Gillum v. Commonwealth, 121 S. W., 445.)

"In this case appellant's counsel made no motion to reform or make the verdict more specific. He permitted the jury to be discharged, and several days later made

the motion to have the judgment set aside. That being the case, he waived the formal defects of the verdict. As the verdict plainly indicated that the jury had found appellant guilty, his substantial rights were not prejudiced by the informality of the verdict.''

In the case at bar, the verdict was returned on March 21, 1912, and judgment was immediately entered thereon. On the next day, March 22, appellant formally objected ''to the rendition and entering of any judgment upon the verdict rendered herein on March 21, 1912;'' but he made no motion, on that day, to set aside the judgment which had been entered the day before. Neither is the form of the verdict made a ground for a new trial. The lower court was never called upon to pass upon the validity of the form of this verdict, and the motion entered on March 22, and above quoted, was not sufficient to raise that question. We have not overlooked the fact that the record in one place shows that the motion above referred to was entered on March 22, and in another place that it was made on March 21, the same day the verdict was returned; the context, however, shows that it was made on the 22d, and not upon the 21st of March. We find no error here.

5. Finally, it is claimed that the alleged misconduct of the juror Gunther is sufficient to vacate the judgment.

When the jurors were asked if they had ever worked for the defendant, the Louisville Railway Co., or had ever had any relative in its service, Gunther remained silent, such silence being universally construed under the practice of the trial court, to carry a negative answer. Upon the motion for a new trial, however, it was made to appear that Gunther had worked for the Louisville Railway Co. for several years prior to 1908, when he was discharged for taking part in the strike of that year; that he had two brothers who formerly had been in the service of the company as motormen or conductors; and that he was a nephew of a stockholder in the defendant company. Gunther says he understood the question to relate to an existing or recent employment, and for that reason he did not speak of his employment prior to the strike of 1908. Furthermore, he had attempted to get reinstated along with the other strikers in 1908, but had failed in the effort; and for the last three years, or more, he had been engaged in the grocery business. Gunther further swore that he then had no

relatives working for appellee, and that if his uncle owned stock in the appellee company, that fact was not known to Gunther. The fact that Gunther's brothers had been employed by the defendant did not disqualify Gunther from serving as a juror.

In Stewart's Admr. v. L. & N. R. R. Co., 136 Ky., 723, we said:

"The fact that one of the jurors was related by marriage to one of the defendant's counsel, that another had a brother in the service of the defendant, and another two nephews, was no ground for setting aside the verdict."

Neither did the fact that he had formerly been employed by the company, particularly after he had been discharged, render him incompetent to serve as a juror. If any presumption is to be raised from the latter incident, it would be one of hostility upon his part towards the company, rather than friendship.

Neither did the fact that his uncle was a stockholder in the company, render him incompetent to act as a juror.

A juror or judge is not always disqualified in a suit by or against a corporation merely because he is related to some of its stockholders. N. Y. Life Ins. Co. v. Johnson, 24 Ky. L. R., 1867; 72 S. W., 762; Stone v. Monticello Construction Co., 135 Ky., 663. See also Rice's Exrs. v. Wyatt, 25 Ky. L. R., 1060; 76 S. W., 1078.

In Sehorn v. Williams, 51 N. C., 576, it was said the courts could not safely lay down any precise rule as to the nature and extent of the interest necessary to render a juror incompetent, but he should be held to be so whenever the circumstances are such as to raise any inference that he would not be impartial.

As Gunther did not know his uncle was a stockholder, he could not have answered the question of the trial judge upon that subject, otherwise than he did.

The disqualification of Gunther, must rest, if at all, upon the idea that his knowledge of his uncle's ownership of stock in the defendant company, and his natural interest in his uncle's welfare, would raise a bias in Gunther's mind in favor of the company; but as a bias can only arise from a knowledge of the ownership of stock by the uncle and his consequent interest in the company, it necessarily follows that the bias cannot exist in the absence of the knowledge which is alone the cause

of bias. In Miracle v. Commonwealth, 148 Ky., 463, we said:

"Where a juror does not know of his kinship to the deceased, he stands in the same relation to the accused as an entire stranger, in so far as the affinity of blood might affect his verdict. It is the knowledge of the kinship and the feeling that arises from it that works the disqualification; and, if the knowledge is absent, the disqualification disappears."

The kinsman must not only have a real interest in the ownership of the corporation, but that interest must be known to the juror in order to disqualify him. If, however, the interest of the stockholder is so small as to be infinitesimal, and not to amount to a real interest in the controversy; or, if the juror was ignorant of the fact that his relative was a stockholder, as in the case here, the kinsman will not be disqualified as a juror.

The facts of this case raise no inference of partiality on Gunther's part towards the defendant, and the court properly refused to grant a new trial.

Judgment affirmed.