GEORGE McLEAN ET AL.

v.

JAMES MATHEWS.

COMMON NUISANCE.—Whatever obstructs travel on a public highway or navigable stream, is a common nuisance, and may be abated by any of the king's subjects.    So, where plaintiffs had fastened an old, disused, and nearly sunken boat to a pier in such a way as to impede the navigation of the Chicago river, the defendants, acting under the authority of the Board of Public Works, had the right to remove it as a public nuisance, if indeed they did not have the right to do so without any orders.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.    Opinion filed December 13, 1880.

This was an action of trespass brought in the court below by appellee, James Mathews, against appellents, for taking from the south branch of the Chicago river, a canal boat, owned by Mathews, and towing it out into Lake Michigan, and, as is alleged, setting it adrift, whereby it was lost and destroyed.

The defendants filed a plea of not guilty, also a plea of justification, setting up in substance, that the defendants, Prindeville, Thompson and Wahl were commissioners of the Board of Public Works of the city of Chicago, and that as such commissioners they were charged with the duty of keeping the channel of the Chicago river free from obstructions, and to remove therefrom anything which, by obstructing the passage of water-craft, became a nuisance therein; that the plaintiff's boat was an old, worthless and abandoned hulk, which was lying at the place mentioned, in the plaintiff's declaration, without proper moorings; that it obstructed the channel and was a nuisance, which continually endangered vessels passing and repassing in the river; that these facts coming to the knowledge of the Board of Public Works, the defendants, Prindeville, Thompson and Wahl, acting in their capacity as

McLean v. Mathews.

commissioners of the Board of Public Works, in pursuance of the laws of the state of Illinois, and the ordinance of the city of Chicago, after having made diligent effort to find the owner of the boat, in order to notify him to remove the same, and having failed to discover him, caused the same to be removed from the channel of the river, as they lawfully might.

There is a further allegation that the defendants, McLean and Hammond, were employed by the commissioners to remove said obstruction, and that they acted while removing the same under and by virtue of the commands of said commissioners.

To this plea the plaintiff replied *de injuria*. There was a jury trial, which resulted in a verdict for the plaintiff for $700, on which the court entered judgment, and defendant's motion for a new trial having been denied, they bring the case to this court, and assign various errors.

Messrs. QUIGG & TUTHILL, Mr. J. S. GRINNELL and Mr. W. H. CONDON, for appellants; that a vessel sunk in a navigable stream is a nuisance, and may be removed, cited Rung v. Shoenberger, 2 Watts. 23; Hopkins v. Crombie, 4 N. H. 520; Hart v. The Mayor, etc. 9 Wend. 570; The King v. Russell, 6 East, 427: The King v. Cross, 3 Campb. 224; The King v. Jones, 3 Campb. 229; Bacon's Abr. "Nuisance," 6; Comyn's Dig. "Nuisance," 4; James v. Hayward, Cro. Ch. 184; Houghton v. Butler, 4 T. Rep. 364.

Upon the right of appellants to remove the boat as a nuisance: Earp v. Lee, 71 Ill. 193; 1 Bishop's Crim. Law, § 704; 1 Dillon on Mun. Corp. § 311; Angell on Watercourses, 49; Wetmore v. Tracey, 14 Wend. 250; Renwick v. Morris, 3 Hill, 621; Selman v. Wolfe, 27 Tex. 68.

The question whether it was a nuisance is for the jury: Lackland v. North, 34 Mo. 259; Selman v. Wolfe, 27 Tex. 68; Stumps v. Kelly, 22 Ill. 140; C. B. & Q. R. R. Co. v. Payne, 49 Ill. 499.

It is the duty of the court to instruct upon the material points made by the pleadings and evidence: Hilliard on New Trials, 167; Proffatt on Jury Trials, 312.

Messrs. Avery & Comstock, for appellee.

Wilson, J. The evidence tended strongly to show that prior to, and at the time of the acts complained of, the plaintiff's boat was an obstruction to the navigation of the Chicago river. She was an old boat, having been built for the Illinois Stone Company, about twenty years prior to her removal by the defendants, and had been used for transporting stone on the canal. She was subsequently bought by the plaintiff, and after being used by him for a time, was laid up in the summer of 1873, at a dock of which plaintiff had the control, on the south branch of the Chicago river, a little north of Fuller street bridge, where she remained unused, until removed by the defendants in 1876. During most of this period she was sunk to her decks, and a part of the time was so insecurely fastened as to frequently break lose from her moorings, and swing partially out into the channel, to the hindrance and delay of passing vessels.

There was also testimony by tugmen who were in the habit of passing up and down the river, to the effect that owing to a bend in the river, near where the plaintiff's boat lay, it was difficult to get past there, with a vessel in tow without colliding with the canal boat. One of them says: " It was impossible almost to get a vessel from the Danville elevator without getting afoul of this canal boat."

Another: "With the Gale" ( the name of plaintiff's boat ) "lying at the docks partially sunk, as she was for two years, in towing a vessel up and down the river in that vicinity, the tow would rub alongside of her as soon as you pulled her round the bend. If you have a big vessel you would have to stop her right where the canal boat was, and if you stopped, the chances were that it would crowd against the canal boat. If the canal boat was not there, I would get my tug as near as I could to the docks. Then you wouldn't have to stop your schooner."

The bridge-tender, who saw the boat daily, says: "The suction of a propeller going up there, would smash her adrift very often; it always caused her to get adrift; that is, when a propel-

ler passed through the river it created a suction, and pulled her loose from the dock, when she would drift right across the channel."

Without quoting further from the testimony, it is enough to say that the evidence on that branch of the subject is uncontradicted, and is of such a character as to leave little room for doubting that the plaintiff's boat, at the time of her removal by the defendants, was, and for a period of over two years preceding had been, an obstruction to the navigation of the river at the place in question.

It is a settled principle of the common law, that whatever obstructs travel in public highways and navigable streams is a common or public nuisance, which may be removed and abated by any of the king's subjects. 4 Black. Com. 167; Earp v. Lee, 71 Ill. 193. In Comyn's Dig. Tit. Action on the Case for a Nuisance, D. 4, it is said: "If it be a common nuisance, as a gate erected across a highway, every one may throw it down." In Bacon's Ab. Tit. Nuisance, 6: " Any one may pull down or otherwise abate a common nuisance, as a new gate, or even a new house, erected in a highway; for if one whose estate is prejudiced by a private nuisance may justify the entering into another's grounds and pulling down and destroying it, it cannot but follow, *a fortiori*, that any one may destroy a common nuisance."

The cases of The King v. Russell, 6 East, 427; The King v. Cross, 3 Camp. 224; and The King v. Jones, 3 Ib. 229, all are to the effect that any obstruction of a public street or highway for an unreasonable length of time, although in the prosecution of a lawful business, as in the loading or unloading of wagons or drays, or by stages waiting and soliciting passengers, is indictable as a public nuisance, although room enough might still be left for the accommodation of the public on the opposite side of the street. So, too, depositing boxes or other articles on the street in front of one's store or shop, except so long as may be necessary for the convenient dispatch of business, or the suffering of one's horses to remain hitched in the street for an undue length of time, is a nuisance; for, as was said by Lord Ellenborough, in 6 East: "The primary object of the

McLean v. Mathews.

street is for the free passage of the public, and anything which impedes that progress without necessity, is a nuisance."

It is upon precisely the same ground that the proprietor of a dock on a navigable stream, may not fasten a boat or other water-craft to his dock and suffer the same to remain there permanently, if thereby an obstruction is created to the free and unimpeded navigation of the stream. If by reason of his ownership of the dock, he has the right, as claimed by appellee's counsel, to thus occupy a portion of the stream during his pleasure, he would have the the same right to extend his dock into the river the same distance, or to build any other permanent structure there, and thus appropriate to his own use, in perpetuity, a portion of a navigable river.

The material questions arising in the present record are fully discussed in Hart v. the Mayor of Albany, 9 Wend. 570, and we will quote a passage from the opinion of the court in that case, as expressive of our views in the case at bar. The proprietors of a certain dock privelege had constructed in the Hudson river at Albany in front of their lots a floating ark, or boat, with a roof and convenient openings for receiving and discharging freight. The question was was whether this was an obstruction to navigation. Mr. Justice Sunderland, who delivered the opinion of the court says:

"If the basin be considered as part of the Hudson river (a great public highway), the right of appellants to appropriate any portion of it to their own exclusive use is equally unfounded. They, like all other citizens, can use it only as a highway for the purpose of navigation; they have no right to exclusively occupy any portion of it, by either floating or permanent buildings or obstructions. This float, if permanently moored and continued in the open part of the river, thereby rendering navigation less safe and convenient, would, I apprehend, most clearly be a public nuisance liable to be indicted as such, or to be abated without indictment by any individual who might be injured or aggrieved by it. * * * Every citizen has a right to the unobstructed passage over the navigable waters and public highways of the state; and I apprehend he may remove any obstruction to his passage, and that

it will not be necessary for him to aver in his justification that he was specially impeded by it. If this be so, I apprehend, with the Chancellor, that this corporation cannot be held to an action for the exercise of a power which every member of the community possesses. But if the true doctrine be that asserted by the complainant's counsel, that no one but a person aggrieved can remove a public nuisance, the corporation whose duty it is to preserve the public streets, the docks and slips, and the river opposite thereto, from being in any manner obsructed may well be considered a party aggrieved by any such obstruction."

The case from which we have quoted was so entirely similar in its facts to the case at bar, and its reasoning so satisfactory, that it may well be considered as decisive of the present suit. We do not understand that it was seriously questioned that the Board of Public Works is the proper party to remove obstructions from the Chicago river whenever they exist. The Chicago river and its branches are made by law a part of the Chicago harbor, of which the harbor-master has the supervision, acting under the orders and directions of the Board of Public Works, or under ordinances and resolutions of the Common Council, as the case may be. In the present case, the defendants, who removed the boat, acted under the immediate orders of the Board of Public Works, and that, we think, was sufficient, if indeed, they had not the right to remove the obstruction as public nuisance without any orders.

The assignment of errors questions the correctness of the instruction given by the court on behalf of the plaintiff as follows:

"If the jury believe, from the evidence that the canal boat in question was the property of the plaintiff, and that said canal boat was recently fastened to the dock which belonged to or was under the control of said plaintiff, and that while said canal boat was so securely fastened to said dock, the said defendants, or some of them, directed by the others, took possession of said canal boat without the consent of the plaintiff, and forcibly removed the same, and set said canal boat adrift upon Lake Michigan, whereby said canal boat became lost to the said

Pindell v. Quinn.

plaintiff, then the jury should find the said defendants, or such of them as participated in or directed such removal, guilty, and should assess the plaintiff's damages at such sum as will compensate him for the value of said canal boat at the time the same was so taken by the defendants."

This instruction is erroneous, by reason of its ignoring the question as to whether the boat was an obstruction to the navigation of the river: Upon the hypothesis stated in the instruction there was nothing for the jury to do but to find a verdict for the plaintiff, for there was no dispute as to the facts therein recited. The jury were, in effect, told that the plaintiff was entitled to recover whether there was an obstruction or not. The question of obstruction was distinctly put in issue by the defendants' plea of justification, and it was to this issue that the evidence was mainly directed on the trial. The real controvery was as to the alleged obstruction, but this was practically taken away from the jury by this instruction, which was the only one given on either side. In this the court erred.

Complaint is also made of the action of the court in refusing all of the defendants' instructions. It is sufficient to say that none of them, in the form in which they were asked, were proper, and there was no error in their refusal.

The judgment of the court below must be reversed for the reasons hereinabove stated, and the case be remanded.

Reversed and remanded.