## LORENZO D. EARP

### v.

## DARIUS B. LEE et al.

1. NUISANCE—*what is a public or common one.* A common nuisance is an offense against the public, by doing anything injurious to all the people generally, or by omitting to do that which the common good requires.

2. SAME—*abatement thereof by private persons.* In trespass for breaking and entering a house, and for tearing down and destroying the same, and taking and destroying personal property in it, the defendants pleaded that the plaintiff kept liquors in the house to sell, and did sell the same in less quantities than one quart, without a license; that he kept there a disorderly house; that persons of bad repute were allowed to assemble there, so that the house was a source of great annoyance to defendants, and that plaintiff threatened to sell whisky, etc., whereby it became and was a public nuisance, and, to abate the same, the defendants entered the house, and tore it down, and broke some glasses, boxes and beer kegs, and destroyed the contents thereof, etc., but did as little damage as possible in abating the nuisance: *Held,* that the plea presented no defense to the action.

3. Nuisances which obstruct travel in public highways, in navigable streams, etc., may be abated by any citizen who is thereby incommoded, and the right of the citizen to abate nuisances is confined to that class of cases, and, even in such cases, it must be done without a breach of the peace.

4. SAME—*how abated.* The remedy for abating a public nuisance is by indictment, and not by removing it by force, without legal proceedings finding it to be a nuisance of that character. Neither the common law nor statute authorizes individuals to tear down and destroy buildings in which an unlawful business is carried on, nor does either permit the courts, on conviction, to have the buildings destroyed or abated, but the offenders are subject to punishment.

5. REVERSAL *as to one, must be as to all the parties.* A judgment at law being a unit, if erroneous, is so as to all the defendants, and can not be reversed as to part and affirmed as to another defendant.

APPEAL from the Circuit Court of Warren county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. JAMES W. DAVIDSON, for the appellant.

Messrs. STEWART, PHELPS & STEWART, for the appellees.

Mr. Justice Walker delivered the opinion of the Court:

Appellant brought trespass *quare clausum fregit*, against appellees, to recover damages for breaking and entering a storehouse, and for tearing down and destroying the same. A second count was added, for taking personal property from the house, and destroying it. Defendants filed the general issue, and a special plea that plaintiff kept liquors in the house to sell, and did sell the same in less quantities than one quart, without a license; that he kept therein a disorderly house; that persons of bad repute were allowed to assemble there, so that the house was a source of great annoyance to defendants, and that plaintiff threatened to sell whisky, etc., whereby it became and was a public nuisance, and, to abate the same, they entered the house, and tore it down, and broke some glasses, boxes and beer kegs, and destroyed the contents thereof, etc., but did as little damage as possible in abating the nuisance.

Appellant filed eight replications to this plea, to which defendants filed a demurrer, but it was overruled, and issues were joined upon the replications, and a trial had, resulting in a verdict in favor of defendants, upon which judgment was rendered, and to reverse it this appeal is prosecuted.

The first question we propose to consider is, whether the special plea presents a defense to the action. If it does not, then the demurrer filed to the replications should have been sustained to it, and the issues formed under it were immaterial. Even if this was a public nuisance, as is claimed, the general rule is, that the remedy is by indictment, and not by removing it by force, without legal proceedings finding it to be a nuisance of that character. Hawkins, in his Pleas of the Crown, defines a common nuisance as an offense against the public, by doing anything injurious to all the King's subjects, or by omitting to do that which the common good requires. It follows that private annoyances are not the subject of public prosecution, but of a private action. This plea does not aver that this house was an annoyance to all

of the people, but it simply avers that it was an annoyance
to the defendants and all other good and peaceable citizens
of the neighborhood; hence it fails to embrace an averment
which would be essentially necessary, even if private persons
would have the right to abate a public nuisance. There is
in this plea no averment that it was hurtful to the whole
public. The averment, at most, would only show that this
house was a private nuisance, for which an action might be
maintained.

The 134th section of the Criminal Code has defined vari-
ous nuisances, and provided for their punishment by fine of
not more than $100, and the court before whom the convic-
tion is had may order the nuisance to be abated by the sheriff
of the proper county; and the statute has provided for the
indictment and conviction of persons selling liquor without
a license and for keeping a disorderly house, and has imposed
adequate penalties; but neither the common law nor the stat-
ute has authorized individuals or communities to tear down
and destroy the buildings in which such unlawful business
is pursued, nor does either permit the courts, on conviction,
to have such buildings destroyed or abated. The keepers of
disorderly houses were subject to indictment at the common
law, but, on conviction, the defendant was only fined or im-
prisoned.

It was held, at the common law, that nuisances which
obstruct travel in public highways, in navigable streams, etc.,
might be removed and abated by any of the King's subjects
who were thereby incommoded, but it is believed that the
right of the citizen to abate nuisances is confined alone to
that class of cases. In this case, it was not the house or the
liquors therein that was a nuisance, but it was the manner in
which they were used, that constituted the offense.

We hazard nothing in saying that no adjudged case of a
respectable court can be found that has held that the facts
set up in this plea, or the evidence introduced under it, con-
stitutes a defense for the destruction of such property. A

few individuals, or even a large portion of the community, have no power to take the law into their own hands, and, in a summary way, enforce the criminal laws of the State. In doing so, the law is violated, and the peace and good order of society is endangered, and riot and bloodshed is invited. In fact, those who are so anxious to thus preserve the morals and good order of society, do not reflect that, in doing so, they are themselves violating the Criminal Code, and rendering themselves liable to indictment.

When men who profess to be moral, and have standing in society, resort to such violent and unlawful acts, they must expect their example will not be lost on the ignorant, vicious and corrupt portion of society. Their natures need restraint, and not prompting to acts of violence; and where we see respectable persons thus violate the law, and render themselves liable to be punished criminally, they need not be surprised if crime of a more serious character shall become common in that community. It may be that public sentiment can be so perverted as to render it impossible to punish persons engaged in acts like the present case, but when the law shall be so far broken down that such wrongs may be perpetrated with impunity, such persons have no right to complain if they shall find themselves without redress, when their own rights are invaded, civilly or criminally.

A number of cases are referred to in support of the plea, but, on being examined, none of them go the length that is claimed by this plea. They refer to public highways and to a class of private nuisances wholly unlike this case. If the doctrine were admitted that a few, or even many, persons might determine that a factory costing a large sum of money was a public nuisance, and that they might tear down and destroy the building, such attempts would inevitably lead to resistance and bloodshed. It would tend to violence, and be productive of great disorder. The owners of property worth vast sums of money would, until it was judicially found to be a nuisance, defend it with vigor, and would never consent that vast inter-

ests should be jeopardized by the vote of a few persons, or even by that of large numbers. Public policy imperatively demands that the doctrine that any person may abate a public nuisance shall be confined to public highways and to navigable streams, etc., and that, in such cases, it shall be done without a breach of the peace. The law has provided an ample remedy in such cases.

In this case, even if appellant was insolvent, he could have been prosecuted and held to bail for keeping a disorderly house, and for each offense in selling liquor without license, and if unable to have given bail, he would have been committed for trial, and convicted, fined and committed until fine and costs were paid. Such a course, vigorously pursued, would have proved effectual; or he was liable to prosecution and fine, before a justice of the peace, for each sale of liquor without a license. There is, therefore, no excuse for appellees taking the law into their own hands.

It is also urged that, although the judgment may be erroneous as to a part of the defendants, still it is correct as to Atkins, and that it should not be reversed as to him. In the first place, a judgment at law is a unit, and is erroneous in whole or is valid as to all the defendants.

Again, there was evidence tending to inculpate Atkins, and there was also evidence tending to exculpate him, and, under the issue presented, we can not know that the jury considered that evidence. All they were trying was, whether the manner in which the house was kept rendered it a public nuisance. If they found it to be such, their inquiry was at an end, as that was presented and treated as a defense, and a complete bar to the action. On this state of the pleadings, we would be wholly unwarranted, even if we had the power, to affirm the judgment as to him and reverse it as to the others.

The judgment of the court below is reversed, and the cause is remanded with directions for the court to sustain the demurrer to the special plea, and for further proceedings.

*Judgment reversed.*