Ridgeway *v.* West *et al.*

---

## RIDGEWAY *v.* WEST ET AL.

REPLEVIN.—*Gaming Instruments Seized by Officer of City.—Statute Construed.—Ordinance Necessary.*—Clause 9 of section 53, 1 R. S. 1876, p. 289, authorizing the common council of a city "to enforce ordinances:  *  *  * To suppress gaming and gaming houses,  *  *  to prohibit and destroy instruments and devices of gaming," etc., does not, by its terms, provide for the prohibition and destruction of such instruments, and is not self-executing, but requires an ordinance therefor to make it effective.

SAME.—*Evidence.*—An ordinance, authorizing the arrest and punishment of any person keeping or visiting an establishment for the purpose of gaming, does not authorize the seizure, detention or destruction of instruments used for gaming.

SAME.—*Presumption.—Supreme Court.*—Where the owner of such instruments brings an action to replevy the same from an officer of a city, who has seized and detained the same, and the defendant, on the trial, introduces in evidence no ordinance of the city, authorizing such seizure and detention, it is presumed by the Supreme Court, on appeal, that no such ordinance was, at the time of the seizure, in existence; and, unless there is evidence of such ordinance the plaintiff is entitled to recover.

SAME.—*Statutes Construed.*—Neither section 38, 2 R. S. 1876, p. 442, of the act defining felonies, nor section 29, 2 R. S. 1876, p. 469, nor section 74, 2 R. S. 1876, p. 480, of the act defining misdemeanors, authorizes the seizure, detention or.destruction of gaming instruments.

From the Marion Circuit Court.

*G. H. Voss* and *W. B. Smith*, for appellant.

NIBLACK, C. J.—This was an action of replevin, before a justice of the peace, for the recovery of the possession of one walnut office table, of the value of twenty-five dollars; one lay-out, of the value of ten dollars; two silver boxes, of the value of fifteen dollars each; two cardpresses, of the value of two dollars and fifty cents each; one case-keeper, of the value of five dollars; one set of checks, of the value of twenty dollars; and one checkrack, of the value of two dollars.

There was a trial and a judgment for the plaintiff before the justice.

On an appeal to the circuit court, and a trial by the court, there was a special finding of the facts, and a judgment for the defendants on such special finding.

The special finding of the court, with the conclusions of law drawn therefrom, was as follows:

"The court, being thereto specially requested by the defendants, finds the facts in this case to be as follows:

"The plaintiff, William Ridgeway, for some time preceding January, 1875, had rented a room, in Indianapolis, over the saloon of Coburn & Saunders, in which he had set up a 'club-room,' or gambling-room establishment, furnished with all the apparatus necessary and suitable or convenient for dealing 'faro,' a game of professional gambling, the whole constituting what is variously known as a 'faro-bank' and a 'gambler's kit,' which he operated in this room jointly with one Brunson, in the business of gaming, for the purpose of winning and losing, chiefly winning, money. About the 10th day of January, 1875, plaintiff left the city, and was absent some ten days, leaving the room and the furniture in charge of Brunson, under what arrangement as to division of profits does not appear, but to run the concern, if he chose, in the business of gambling, for gain.

"During the absence of the plaintiff, upon affidavit, a warrant issued against plaintiff and came into the hands of the defendant West, who was marshal of the city, [and]

who went to the room, and, not finding plaintiff, arrested Brunson, who was operating the bank at the time, and several other men, who, at the time, were engaged in the game for money. West arrested the banker and depositors, and, at the same time, seized the articles in controversy in this suit and turned them over to the defendant Wilson, who was the chief of police. The parties arrested were fined by the mayor on the next day; all on pleas of guilty, except Brunson, who was convicted and fined. All the articles seized were specially constructed and adapted to the uses of gambling at faro, and were, collectively, a 'faro-bank' and appurtenances, a complete gambler's apparatus or kit, some of them not applicable to any other purpose, and all of them being what is euphoniously known to the 'profession' as 'club-room furniture.'

." On the return of plaintiff to the city, he demanded the return of his property from Wilson, which was refused. Wilson then had possession of all the articles except one silver dealing-box and one set of checks or chips, then in the possession of West. No demand was made on West for them. Plaintiff then brought this suit against both.

" The warrant was never served upon Ridgeway personally, nor had defendant West seen him at any time since the seizure, and before this suit was brought.

" The aggregate value of the property returned to the plaintiff on the writ of replevin, in this suit, was $62,00.

" As conclusions of law from the foregoing facts, the court finds:

"1st. That the possession of Brunson, at the time of the seizure, was the possession of plaintiff.

" 2d. That, by the statute of the State, the simple possession of articles of this character, for uses and purposes to which they were applied by plaintiff and Brunson, is a felony; that such possession, for such purposes, constituted them 'professional gamblers' and felons, by the law

of the land, liable to fine and imprisonment in the State's prison.

" 3d.   That the legal presumption is, if possession of such articles was resumed by such people, it would continue to be of the felonious character which it has heretofore been; that to award them the possession of their peculiar property would be to place the court in the attitude of an accessory—both before and after the fact—to a felony.

" 4th.   That the original seizure of these articles by the officers, under the circumstances of the case, was lawful; that it is not the province of the court to enquire into what disposition should be made of them, as the court would refuse to interfere for their return to the plaintiff, even as against a mere trespasser."

Exceptions were reserved to the conclusions of law at which the court arrived, as above stated.

The act for the incorporation of cities in this State, in enumerating the powers and duties of the common council, provides, that " The common council shall have the power to enforce ordinances :      *      *      *      *      *

" Ninth.   To suppress gaming and gaming houses, and houses of ill-fame, to prohibit and destroy instruments and devices of gaming, and restrain fraudulent practices within the said city." 1 R. S. 1876, p. 288, sec. 53, clause 9.

This grant of power does not, by its terms, provide for the prohibition and destruction of the " instruments and devices of gaming," and is not self-executing for such a purpose.   It requires an ordinance to make it effective. Robb v. The City of Indianapolis, 38 Ind. 49.   The common council is only empowered to take action in the premises through the machinery of an ordinance.

On the trial in the circuit court, the defendants introduced in evidence two ordinances of the city of Indianapolis, which read as follows :

" Sec. 12.   It shall be unlawful for any person to keep or maintain an establishment for the purpose of gaming

or of wagering on any game of chance [for] money, its equivalent or representative, or for any person to visit any such establishment for the purpose of gaming. All persons found therein shall be deemed to have visited the same for the purpose of gaming, unless they prove they were there for a lawful purpose. Any person violating the provisions hereof shall be fined in any sum not exceeding fifty dollars, to which may be added imprisonment not exceeding thirty days.

"Sec. 13. It shall be lawful for any officer or policeman of said city to arrest any person found visiting a gaming house, or house of ill-fame or prostitution, or who shall be found therein. And all persons found therein shall be deemed guilty of an unlawful act and subject to arrest by any officer or policeman finding him in any such unlawful act."

As no ordinance of the city of Indianapolis "to prohibit and destroy instruments and devices of gaming" was introduced in evidence, and as no such ordinance was referred to in any way in the special finding of the court, we feel authorized to assume that no such ordinance was at the time in existence.

Section 38 of the act defining felonies, 2 R. S. 1876, p. 442, makes the keeping of any gaming apparatus and professional gambling a felony punishable by fine and disfranchisement, but makes no provision for either the seizure, detention or destruction of the gaming apparatus.

Section 29 of the act defining misdemeanors, 2 R. S. 1876, p. 469, declares the keeping of a gaming house to be a misdemeanor punishable by a fine of not less than fifty and not more than five hundred dollars, but does not provide for the seizure or forfeiture of any gaming apparatus found in the building.

Section 74 of the same act, 2 R. S. 1876, p. 480, further declares the keeper or exhibitor of any gaming table, roulette, shuffle boards, faro-bank, nine-pin alley, billiard table, or other gaming apparatus for the purposes of

gaming, guilty of a misdemeanor punishable by a fine, to which imprisonment may be added, but is equally silent as to the seizure or destruction of the property so kept or exhibited for the purposes of gaming.

The ordinances above set out, as has been seen, provide only personal punishment upon those who violate them, and neither authorize nor direct any thing to be done with the property found used in gaming· by persons violating such ordinances. We are, therefore, driven to the conclusion, that there was no law or ordinance authorizing either the seizure or detention of the property in controversy in this suit by the appellees, or either of them, in the manner and under the circumstances described in the special finding of the court, and that the court erred in its conclusions of law from the facts found by it in its special finding.

The appellant discusses the constitutional power of the Legislature to authorize the common council of a city to enforce ordinances for the destruction of private property as a punishment of the owner for crime, but that question does not properly arise in this case, and we have not considered it.

The judgment is reversed, at the costs of the appellees, and the cause remanded with instructions to the court below to render judgment on its special finding, in favor of the appellant.