[No. 3465.]

### HOUSTON ET AL. v. WALTON.

1. MUNICIPAL CORPORATIONS—*Power to Abate Nuisances.* The statute (Rev. Stat., sec. 6525, cl. 45) does not in terms provide for the abatement of nuisances and is not self executing for this purpose. It requires an ordinance to make it effective.

2. —— *Ordinance—Effect.* An ordinance prohibiting the sale of intoxicating liquors within the limits of the city, and declaring that "a place kept for such sale, and the business, and the liquors kept" is a nuisance "to be abated as any other nuisance" is conclusive in its effect. The provision that the nuisance shall be abated "as any other nuisance" can be held to mean only as any other nuisance may lawfully be abated.

As to nuisances which may at common law be summarily abated, e. g., the obstruction of the public highway, it may be that the municipal authorities may proceed without the aid or adjudication of any court. Otherwise, in the absence of statute, as to other nuisances, or where the existence of the nuisance depends upon proof that the law has been violated.

The city authorities are not empowered to enter a place where intoxicating liquors are sold, and seize upon and destroy such liquors. It is their duty to resort to the courts for the punishment of the offending parties; and the presumption must be indulged that such resort will be effective.

3. INTOXICATING LIQUORS—*Not per se a Nuisance*, but property, for the unlawful conversion or destruction of which damages may be awarded in a civil action.

4. MAXIMS—*Ex Turpi Causa Non Oritur Actio*. Whether an action arises or can be maintained *ex turpi causa* is to be determined on demurrer by the consideration whether plaintiff must depend upon and prove, to make out his case, a transaction *malum in, se*, or prohibited by law.

One suing for the destruction of a stock of intoxicating liquors, alleging nothing but his title and possession, and the trespass, is not *prima facie* within the maxim. His cause of action depends not upon any illegal conduct on his own part, but upon the illegal acts of the defendant.

5. —— *In Pari Delicto*. The mere fact that the illegal acts of defendant were provoked by other illegal acts of plaintiff's, or his predecessors in title, does not place them *in pari delicto*.

The arrest with unnecessary force of one found in possession of a stock of intoxicating liquors, the destruction of the liquors with other legitimate merchandise, all in a disorderly and tumultuous manner, in disturbance of the peace of the Sabbath day, is not justified by an ordinance prohibiting the sale or keeping for sale, of such liquors, and declaring that the sale or keeping for sale of such liquors is a nuisance; nor by a vote or resolution of the city council directing the city marshal to seize and bring before the police magistrate all such liquors, with the persons of those found upon the premises.

6. APPEAL—*Effect as a Supersedeas*. Judgment in *quo warranto* dissolving a corporation; pending a perfected appeal therefrom the corporation may effectually dispose of its property.

7. REPLEVIN—*Plaintiff's Right Pending the Action*, is similar to that of a bailee. His possession is lawful. He may maintain an action for the recovery of the goods, or, if destroyed, for their value.

The measure of his damages in such action is the value of the goods.

8. APPEALS—*Harmless Error*. Where the plaintiff's case is established by evidence which is not contradicted, remarks of the trial judge having a natural tendency to prejudice the jury against the defendant will not be regarded as prejudicial error.

9. DAMAGE.—*Evidence in Mitigation*. Semble that in an action for the destruction of a stock of intoxicating liquors the defendant may show that they were kept for an illegal purpose, and could not lawfully be sold.

*Appeal from Fremont District Court.* HON. CHARLES
· CAVENDER, Judge.

Mr. HARDY SAYRE, Mr. A. L. TAYLOR, Mr. J. G.
SCHWEIGERT, for appellants.

Mr. J. H. MAUPIN, Mr. CHARLES E. BRADLEY, for
appellee.

Judgment affirmed.

KING, J., delivered the opinion of the court.

Appellee brought his action in trespass against the
City of Cañon City, David J. Houston and eight others,
appellants herein, to recover damages for entering cer-
tain rooms in said city and taking therefrom and de-
stroying, personal property consisting chiefly of intox-
icating liquors, but including other drinks and cigars.
Appellee suéd as assignee of The Cañon City Labor Club,
a corporation, which he alleged was the occupant of the
premises, and the owner and in possession of the goods
at the time of their destruction, and charged that the
goods were destroyed by said Houston and others, at
the instigation and request of the defendant city, made
by and through its duly qualified and acting officials.
The damage claimed was the alleged value of the goods.

The first defense was a general denial. For a sec-
ond defense it was alleged that, at and prior to the time
of the destruction of said goods, an ordinance of said
city was in full force and effect prohibiting the sale of
intoxicating liquors within the limits of the city, and
making it unlawful to keep such liquors for the purpose
of sale within any building in said city, and further
providing that the sale, or keeping for the purpose of
sale, of any of such liquors, *constituted a nuisance, to be
abated as any other nuisance,* and that it should be un-
lawful to use any means or device, as the organization

of a club, incorporated or not, for the purpose of evading any of the provisions of the ordinance, violation of any of which provisions subjected the person offending to a penalty of fine and imprisonment; that after the adoption of said ordinance The Cañon City Labor Club was organized with intent and purpose of carrying on a saloon under the guise of a social club, for the purpose of evading the provisions of said ordinance; that the goods alleged to have been destroyed were purchased by plaintiff, and said club, and kept for the purpose of sale, upon the premises and within the building mentioned in the complaint and answer, and were, by plaintiff and said club, being sold by the drink, over the bar, as at any saloon, and that such was the principal business of plaintiff and said club; that the city council had investigated the conduct of plaintiff and the club, and determined that the organization and carrying on of said club by plaintiff and his associates constituted a public nuisance, under the provisions of said ordinance, and thereupon adopted the following resolution:

"Be it resolved by the city council of the city of Cañon City, Colorado, that the so-called 'social clubs' known as The Cañon Jockey Club and The Cañon City Labor Club, and each of them, be and hereby are, declared by said council to be public nuisances, and that the city marshal be, and hereby is, directed to proceed immediately without any delay whatever, to abate entirely and put an end to said 'clubs' as such public nuisances, and to arrest and bring before the police magistrate of said city all proprietors, officers, bartenders. clerks and employes of said 'clubs,' and confiscate and bring before the police magistrate of said city, all intoxicating, spirituous, malt, vinous, fermented and mixed liquors that are within the room or rooms, basement or basements and storage or warehouses of said 'clubs,'

all of which liquors shall be disposed of as directed by
said city council, and further, to take the names of all
persons in said room or rooms or who are in or upon
any of said premises at time of said arrests and con-
fiscation'';

that the defendant, Houston, at all times mentioned
in the complaint, was the marshal of said city; that act-
ing as such and in the performance of his duties under
said ordinance and resolution, he called to his aid his
co-defendants, entered the premises in which said alleged
nuisance was being carried on, and did then and there
abate the same, and arrest the plaintiff as the keeper of
the premises, and maintainer of the nuisance, and that
all that was done by the defendants, or any of them, was
done under said ordinance and resolution.

A general demurrer to the second defense was sus-
tained by the court, after which plaintiff voluntarily dis-
missed his cause of action as to the city. The cause was
tried to a jury upon the issues joined by the complaint
and the first defense, and submitted on an instruction
by the court that if the jury found for the plaintiff it
should assess his damages in the full amount alleged in
the complaint as the value of the goods.

The principal grounds upon which appellants attack
the judgment are that the court erred in sustaining
plaintiff's demurrer to the second defense, and in over-
ruling defendants' motion for a new trial. Other minor
objections are urged but will require little consideration.

1. The sufficiency of the allegations of the special
defense to constitute justification for defendants' acts,
is the most serious and important question involved in
the case, not only to the litigants here, but as a matter
of general interest and concern. Appellants contend that
because appellee's assignor was engaged in the unlawful

selling of intoxicating liquors in violation of an ordinance of the city, that fact of itself made its place of business, and its business, a nuisance, which the city might lawfully and summarily abate by the destruction of such liquors; and that the ordinance pleaded in the second defense, supplemented by the action of the city council resulting in the resolution set forth herein, was sufficient to conclusively fix and determine the character of the place, and the business of plaintiff, and the club, as a public nuisance, and authorize its abatement by destruction of the goods. But they further insist that if the acts of appellants were illegal, still the business of plaintiff and his assignor was also illegal, and therefore the law will refuse them redress in civil damages— that both plaintiff and defendants being law-breakers with respect to the matters in litigation, the law and the courts will leave them where they find them; and further, that inasmuch as the goods were not such as could be lawfully sold within the city, they had no market value, and therefore were not property for the destruction of which civil damages could be awarded. If the second defense is sufficient it is because of one or more of the following reasons: (1) the goods and business, and place of business, of plaintiff's assignor, were nuisances *per se,* or nuisances by virtue of the ordinance pleaded; (2) defendants had the right, at common law, or because so authorized by ordinance and resolution, to abate the nuisance in the manner shown, to-wit, by destroying the goods; (3) the action being for the value of the goods bought, kept and used in violation of the ordinance of the city, the courts will not lend their aid for their recovery; (4) the parties were *in pari delicto;* (5) sale of the goods being prohibited, they had no value in law, and were not property for which substantial damages could be awarded.

The general statutes (paragraph 45 of section 6525) confer upon towns and cities the power "to declare what shall be a nuisance and to abate the same, and to impose fines upon parties who may create, continue or suffer nuisances to exist." This grant of power does not, by its terms, provide for the abatement of nuisances, and is not self-executing for such purpose. It requires an ordinance to make it effective.—*Ridgway v. West et al.,* 60 Ind., 371; *City of Denver v. Mullen et al.,* 7 Colo., 345. The power of a municipality, under the foregoing statutes, to declare and abate an alleged nuisance is discussed in *City of Denver v. Mullen et al., supra,* in which the court said:

"The proper construction of this language is, that the city is clothed with authority to declare, by general ordinance, what shall constitute a nuisance. That is to say, the city may, by such ordinance, define, classify and enact what things or classes of things, and under what conditions and circumstances, such specified things are to constitute and be deemed nuisances; * * * not that the city council may, by a mere resolution or motion, declare any particular thing a nuisance which has not theretofore been pronounced to be such by law, or so adjudged by judicial determination."

The facts in the case cited differ from those in the case at bar in this, that no ordinance was before the court defining nuisances; while in pleading the second defense in this case an ordinance is presented which declares The Cañon City Labor Club and its business a nuisance, but provides no manner of abatement, except by the words "as any other nuisance." The cases are similar, however, in that the city in each case, without judicial determination, and by resolution, declared the particular thing under consideration a nuisance, and or-

dered its summary abatement by destruction of the property. In this respect the court said:

"It is only certain kinds of nuisances that may be removed or abated summarily by the acts of individuals or by the public, such as those which affect the health, or interfere with the safety of property or person, or are tangible obstructions to streets and highways, under circumstances presenting an emergency; such clear cases of nuisances *per se* are well understood and need not be further noticed here to distinguish them from the case before us."

There have been no decisions by a court of last resort in this state as to the power of a municipality to declare that the selling of intoxicating liquors, or the keeping of the same for sale, or keeping a place in which they are sold in violation of the law or ordinance, if passed, will be conclusive upon that question. But the matter has been decided by the highest courts of other states, including the supreme court of Illinois, under a general statute conferring such power in language almost identical with that of our own statute, and such power has been upheld and sustained.—*Goddard v. President and Trustees of Jacksonville*, 15 Ill., 588; *Laugel v. City of Bushnell*, 197 Ill., 20; *City of Topeka v. Raynor*, 8 Kan App., 279, 58 Pac., 557. In *Laugel v. City of Bushnell, supra*, decided in 1902, the court in sustaining such an ordinance, classified nuisances as follows: (1) those which in their nature are nuisances *per se* or are so denounced by the common law or by statute; (2) those which in their nature are not nuisances but may become so by reason of their locality, surroundings, or the manner in which they may be conducted, managed, etc.; (3) those which in their nature may be nuisances, but as to which there may be honest differences of opinion in impartial minds; and with reference thereto said:

"The power granted by the statute to the governing bodies of municipal corporations to declare what shall be nuisances and abate the same, etc., authorizes such bodies to conclusively denounce those things falling within the *first* and *third* of these classes to be nuisances; but as to those things falling within the second class, the power possessed is only to declare such of them to be nuisances as are in fact so";

and in that case held that an ordinance which declared that any place in the city where hop ale, cider and other like drinks were kept for sale, sold or given away, constitutes a nuisance, was within the power of the city council, and that such determination was conclusive.

Under these authorities the city of Cañon City had the power to pass the ordinance set forth in the special defense, declaring such a place as that alleged to have been kept by the plaintiff in this case, and the business and the goods so kept, a nuisance, and such declaration and determination was conclusive. The ordinance made no provision for summary abatement by destruction of the property, or otherwise, and it was not self-executing. The language of the ordinance to the effect that such nuisance should be abated as any other nuisance, can only be held to mean, as any other nuisance can lawfully be abated. Appellants contend that the statute conferring power upon municipalities to declare what shall be a nuisance and to abate the same, means that the city is not required to ask some court to make or aid the abatement, but has the same right to summarily abate the nuisance that a private person has to remove an obstruction on a highway which impedes his passage. That may be true as to nuisances which may at common law be so abated; but in the absence of statute or ordinance so providing, it is not true as to other nuisances, nor where the existence of the nuisances depends upon

proof that the law has been violated. That is not an
open question in this state. Since this cause was tried
in the court below, and under an ordinance similar to
the one pleaded in the special defense herein (but con-
taining a provision for abatement, permitting and re-
quiring the city marshal and other police officers to abate
a nuisance by closing up the place declared to be such
and preventing any person from entering the same ex-
cept for the lawful removal of such liquor), the defend-
ant city attempted and threatened to carry out the
summary abatement of an alleged nuisance such as is
here under consideration, but was enjoined from so do-
ing. On appeal to the supreme court such action of the
trial court was sustained, the court holding that the vio-
lation of the ordinances, if any there was, consisted in
dispensing liquors to members of the club, and that
whether there was such violation could not be deter-
mined by the city officers.—*Canon City v. Manning,* 43
Colo., 144. The court said:

"Persons, even though they be officials of a munici-
pality, may not take the law into their own hands, how-
ever justifiable they may think such a course may be
to prevent infringement of the law.   *   *   *   A man's
property cannot be seized, nor can he be punished, ex-
cept for a violation of the law, and whether he has been
guilty of such violation as justifies the seizure of his
property, or the infliction of punishment, can only be
determined by a court of competent jurisdiction where
he is afforded an opportunity to be heard before judg-
ment is pronounced against him." (Citing *Darst v.
People,* 51 Ill., 286; *Earp v. Lee,* 71 Ill., 193; *Baldwin
v. Smith,* 82 Ill., 162.)

This case and the cases therein cited seem to be
conclusive against the defendants of their right to abate
the alleged nuisance at the time and in the manner set

forth in their special defense. Conceding the truth of all the allegations of the special defense, it does not appear that the acts of plaintiff and his assignor might not have been prevented, and the business entirely stopped in due time, by the usual and ordinary processes and writs available to the city or the citizens thereof. It must be presumed that the laws relative to the sale of intoxicating liquors can be effectively enforced if proper effort be made. The records and reports of the supreme court and of this court abundantly show the efficacy of the laws, and of the courts, to prevent and abate the acts and business unlawfully carried on by the plaintiff and his assignor in this case. He and his associates were repeatedly convicted and their convictions sustained by the supreme court (*Lloyd et al. v. Canon City,* 46 Colo., 195). The Cañon City Labor Club as a corporation was dissolved (*Canon City Labor Club v. People,* 121 Pac., 120).

It being conceded for the purpose of the demurrer that plaintiff and his assignor were carrying on the business of selling intoxicating liquors in defiance of law, counsel, in support of their contention that the civil courts will not aid plaintiff in securing damages for the destruction of such property, cite many and respectable authorities: *Oviatt v. Pond,* 29 Conn., 479; *Nichol v. Valentine,* 36 Me., 322; *Plummer v. Harbut et al.,* 5 Ia., 308; *Sommer v. Cate,* 22 Ia., 585; *Dolan v. Buzzell,* 41 Me., 473; *Walker v. Shook et al.,* 49 Ia., 264; *Blunk v. Waugh,* 122 Pac. (Okla.), 722; *O. F. Haley Co. v. State,* 125 Pac. (Okla.), 736, 738. Under these authorities and others it is clear that a suit upon a contract for the price, or in *quantum meruit* for the value, of liquors may not be enforced where such liquors were sold in violation of the law. But no decision has been cited by appellants, nor have we found any, which holds either that such

liquors have no value in law, or that the value thereof cannot be recovered when wrongfully destroyed or converted, except under a statute which provides in substance that no action shall be maintained for the recovery or possession of spirituous liquors, or the value thereof, except in cases where the person owning or possessing such liquors, with lawful intent, may have been illegally deprived of the same; or which provides that there shall be no property rights in such liquors. Such statutes were shown to be in force in *Oviatt v. Pond, Dolan v. Buzzell, Sommer v. Cate, Walker v. Shook, and Blunk v. Waugh, supra*. Under the several statutes referred to it has been held, either upon the statutory inhibition against such action, or for the reason that the liquors were not to be regarded as property, that an action in trespass or trover for the value of such liquors cannot be maintained, and that even if unlawfully converted or destroyed, nominal damages only can be recovered.

Under the laws of this state spirituous liquors are regarded as property, are taxed, may be lawfully purchased, possessed and used for many purposes. In *Brown v. Perkins*, 78 Mass., 89, and *Earp v. Lee* and *Baldwin v. Smith*, the Illinois cases cited with approval by our supreme court in *Canon City v. Manning, supra*, it is held that under laws similar to ours, intoxicating liquors are not *per se* a nuisance, are property, and that in a civil action such as this for unlawful conversion or destruction, compensation in damages may be awarded, and that the measure of the damage is the value of the property destroyed.

Appellants claim the benefit of the maxim that no man shall be allowed to found any claim upon his own iniquity; *ex turpi causa non oritur actio;* that because the claim is for the value of liquors which were pur-

chased, kept and intended for an illegal purpose, plaintiff cannot recover.

"No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appear to arise *ex turpi causa,* or from the transgression of a positive law of this country, there the court says he has no right to be assisted."—Wharton's Legal Maxims, p. 81; *Martin v. Hodge,* 47 Ark., 378, 384.

"The test to determine whether an action arises *ex turpi causa* is the plaintiff's ability to establish his case without any aid from an illegal transaction. If his claim or right to recover depends upon a transaction which is *malum in se,* or prohibited by law, and which he must prove in order to make out his case, he cannot recover."—*Martin v. Hodge, supra.*

The foregoing test, although decisive on demurrer to the sufficiency of the complaint, does not preclude an illegal transaction as a bar to the suit, nor evidence in support thereof. The plaintiff herein, in order to state and prove his cause of action, was not required to state or prove, and did not state, anything except ownership and possession of the property at the time of the alleged trespass and its destruction by defendants; and this, as against a naked trespasser or wrongdoer, was sufficient. His claim or cause of action did not directly arise from and was not based upon, his own illegal transaction, but upon the illegal acts of appellants, in which he did not participate. In *Hall v. Corcoran,* 107 Mass., 251, 253, it is said:

"The fact that the owner of property has acted or is acting unlawfully with regard to it is no bar to a suit by him against a wrongdoer, to whose wrongful act

the plaintiff's own illegal conduct has not contributed. Thus, an action lies against one who takes and appropriates to his own use property kept by the plaintiff in violation of a statute and therefore liable to be destroyed."

The mere fact, if fact it be, that the illegal acts of appellants were provoked by other illegal acts of plaintiff and his assignor, does not place the parties *in pari delicto.* The case of *Haley v. State,* 125 Pac. (Okla.), 736, relied on by appellants, apparently takes a different view from that expressed in *Hall v. Corcoran, supra,* and in the tests mentioned. The apparent difference arises from its sweeping declaration that "if the courts will not open their doors to enforce an illegal contract, they certainly will not to enforce a demand inseparably connected with a violation of the criminal laws." This declaration, however, is inseparably connected with the statute of Oklahoma which declares that there are no property rights whatever in liquor kept or used in violation of its laws.

The overwhelming preponderance of authority supports the ruling of the trial judge upon the demurrer. Among the cases are the following: *Coppedge et al. v. Goetz, etc., Co.,* 67 Kan., 851; *State v. Stark,* 63 Kan., 529; *Carry Nation v. District of Columbia,* 34 App. D. C., 453, 26 L. R. A., N. S. 996; *Baldwin v. Smith,* 82 Ill., 162; *Earp v. Lee et al.,* 71 Ill., 193; *Preston v. Drew,* 33 Me., 558; *Booraem v. Crane,* 103 Mass., 522; *Monty v. Arneson,* 25 Ia., 383; *Lowry v. Rainwater,* 70 Mo., 152; *Dolan v. Buzzell,* 41 Mo., 473; *Ridgway v. West et al.,* 60 Ind., 371; *Brown v. Perkins,* 78 Mass. (12 Gray), 89; *Hall v. Corcoran,* 107 Mass., 251; *City of Chicago v. Union Stockyards,* 164 Ill., 224; *Fuller v. Bean,* 30 N. H., 181.

The evidence shows that the arrest of plaintiff by the defendants was effected by unnecessary force and

violence, amounting to assault and battery; and the destruction of the property, which, besides the intoxicating liquors, included much legitimate merchandise, was accompanied by acts which attracted such attention as to disturb the peace of an otherwise orderly community on a Sabbath morning. The final appeal of every citizen of this state for redress of grievances must be to the law. There is no grievance that is a fit object of redress by violence and riot. "In no case is the interposition of mob law either necessary, justifiable, or excusable." Safeguarding every citizen, without regard to occupation or station in life, is the constitutional guaranty, that no person shall be deprived of life, liberty or property, without due process of law. Punishment may be inflicted or property confiscated, only through courts of competent jurisdiction and after due inquiry. If the law is not sufficient, the remedy is through legislation. The courts of last resort have steadfastly adhered to these elementary and fundamental principles of our constitutions and laws, and refused to relieve individuals from pecuniary liability for damage caused by them in attempting to enforce the criminal laws while themselves violating the law. Upon these principles, as well as upon preponderance of authority, we hold that the matters alleged in the second defense constituted neither justification or excuse for defendants' acts, nor a defense to the cause of action.

2. Defendants based their motion for a new trial chiefly upon the following matters: (a) The evidence does not show a legal assignment of the claim to plaintiff; (b) the evidence showed that part of the liquors alleged to have been destroyed were held by plaintiff's assignor under bond in replevin, and not absolutely, and that its claim thereunder could not be assigned; (c) improper language used by the court tending to prejudice the jury; (d) newly discovered evidence.

The club, plaintiff's assignor, was in possession of the goods, and the defendants had no right thereto; and, as to them, whether with or without consideration, the club had the right to make the assignment. Moreover, an apparently good assignment was established by authority of an order of the board of directors, made at a meeting duly called and held. It was contended in argument that the corporation had been dissolved, and therefore could not make the assignment. That matter was not in evidence but appears upon the records of this court (*Canon City Labor Club v. People,* 121 Pac., 120); but it also appears that after the order of dissolution made by the district court, an appeal was taken which operated as a supersedeas. Therefore, pending the appeal, the corporation might lawfully act, and the final order of dissolution made by this court would not retroact so as to make ineffective an assignment good at the time it was made.

It appeared upon cross-examination that part of the liquors, in value amounting to about one-half the damage asked, had been confiscated by the city, retaken by the club under its bond in replevin, and by it held in storage. The rights of the plaintiff's assignor in this respect were the same or similar to those of a bailee. Its contract of bailment was contained in the bond which required it to return the property to the city in case the city's right to the same should be adjudged. The club's possession was therefore lawful. Under the well recognized law of bailments, the bailee can maintain an action for recovery of the goods, or, if destroyed, for their value; and even though the city should eventually prevail in the replevin suit, the right of the bailee to have his property, or its value, to return to the city under bond, cannot be denied, and the measure of damage, being the value of the goods, would not differ although the bailee's right was not absolute.

The judge upon the trial made remarks that would have a natural tendency to prejudice the jury against the defendants. But we think they could not have affected the verdict, for the reason that the instruction of the court practically directed a verdict for the plaintiff upon testimony that was undisputed. The court fixed the damages at the value alleged in the complaint and supported by plaintiff's testimony, the only exception being that the jury were not bound by plaintiff's testimony if they believed it to be false. Defendants offered no evidence. The jury could not well find otherwise than for plaintiff in the absence of any testimony against him.

The showing made on the ground of newly discovered evidence is wholly insufficient. The defendant may have had the right to show the illegal purpose for which the liquors were kept, for the purpose of affecting the value thereof. If they could not be lawfully sold, that fact might materially affect their market value, and evidence tending to show it would be both material and competent. But the defendants did not offer such testimony, perhaps upon the theory that the same was excluded by the court's ruling upon the demurrer to the special defense. If admissible at all, it was, we think, admissible under the general denial, as any other fact affecting values. But by reason of their failure to offer such proof, its exclusion cannot avail the defendants.

No error appearing in the record, the judgment is affirmed.

Judges Cunningham and Morgan dissent.

CUNNINGHAM, Judge, dissenting:

Finding myself unable to concur in the conclusions reached by the majority of the court, I have reluctantly determined that it is my duty to state the grounds upon which I base my dissent. There are several propositions of law covered by the majority opinion, but I shall limit

my consideration to one, expressing no opinion as to all other matters discussed and settled by the majority opinion. The error committed by the trial court in sustaining the demurrer of plaintiff to the second defense set up in the answer, ought, in my judgment, to reverse the judgment, and it is to this error I shall confine myself.

1. It will be observed by reading the second defense in the action, set out in full in the majority opinion, that it charges, *inter alia,* that at the time of the destruction of the liquors, an ordinance of the city was in full force and effect prohibiting the sale, or keeping for sale, of liquors within the limits of the city; that the assigned club was organized with the intention and for the purpose of violating this ordinance; *that the goods destroyed were purchased and kept by plaintiff and said club in furtherance of a common design or purpose to defy the law.* By demurring, instead of denying, plaintiff admits these allegations of the defendant's answer are true. It is my firm conviction that defendant should have been given an opportunity to prove these serious, and, I think, material, allegations. And if the defendant had succeeded in establishing the truth of these allegations, it would have become the duty of the court to dismiss the case. Proper self-respect requires, as it seems to me, that courts of justice should not sustain actions in regard to property which is admittedly bought and kept for the sole purpose of defying the law, whether that property be the implements of a burglar, the spurious coin of a counterfeiter, the grog of a bootlegger, or the paraphernalia of a gambler. It has been well said by a strong court, speaking through a distinguished jurist, that:

"One who sets himself deliberately at work to contravene the fundamental laws   *   *   *   forfeits his own right to protection, in those respects, wherein he was

studying to infringe the rights of others. * * * So, too, if any member of the body politic, instead of putting his property to honest uses, converts it into an engine to injure the life, liberty, health, morals, peace, or property of others, he thereby forfeits all right to the protection of his *bona fide* interest in such property, before it was put to that use. And he can, I apprehend, sustain no action against anyone who destroys his property with the *bona fide* intention of preventing injury to himself or others."—*Spalding v. Preston*, 21 Vermont, 9.

It may be contended that a saloon is not "an engine to injure the life, liberty, health, morals, peace or property of others," but, if such argument be advanced, that is, if it shall be contended that the saloon is not *per se* just such an institution, and calculated to injure the life, liberty, health, peace and morals of any community in which it may be operated, then I submit as my authority for holding a contrary view the following language from *Crowley v. Christensen*, 137 U. S., 86:

"By the general concurrence of opinion of every civilized and Christian community there are few sources of crime and misery to society equal to the dram shop where intoxicating liquors in small quantities to be drunk at the time are sold indiscriminately to all parties applying. The statistics of every state show a greater amount of crime and misery attributable to the use of ardent spirits obtained at these retail liquor saloons than to any other source."

The above language will be found quoted with approval in *Schwartz v. People*, 46 Colo., 249. I submit that under this authority, which has the sanction of our own supreme court, that according to the allegations of the second defense of defendant's answer to which the trial court sustained a demurrer, plaintiff and his as-

signee were maintaining and operating an institution that was not only *malum prohibitum,* but *malum in se.* In *Spalding v. Preston, supra,* the supreme court of Vermont further says:

"If such plaintiff got out of court without getting into Newgate * * * he might esteem himself fortunate."

Joseph Walton is to be congratulated, since he not only gets out of court without getting into Newgate, but he walks triumphantly out of the courts of Colorado, with a judgment for the full value he places upon the grog which he bought and kept for the express purpose of defying the law, if the allegations of defendant's answer, to which the demurrer was sustained, were true. Doubtless Joseph will cherish for the balance of his days a profound regret that he did not ask for punitive damages in this case. It is a neat turning of the tables that makes of a chronic law-breaker the instrumentality for law enforcement. When Satan receives a consideration for rebuking sin, the anomaly of his conduct disappears. Walton could not have recovered judgment against the city marshal had he sold his liquors to that officer on credit—this much is conceded by the majority opinion. If the officer violated the law in destroying the liquors, then he should answer to the law, rather than to a law-breaker. It is a strange perversion of the doctrine of The Atonement which permits the washing away of sin with sin; an unusual application, to say the least, of the maxim *similia similibus curantur.*

The rule established by the majority opinion in this case, if the same be permitted to stand, violates the maxim of the law that no man should be allowed to found any claims upon his own iniquity: *nullus commodum capere potest de injuria sua propria.*

"To enforce an obligation to virtue by refusing encouragement to wrong, the law leaves the parties to such transactions where it finds them, allowing no action or suit by either, even though defendant has acquired an advantage over plaintiff which he is thereby enabled to retain."—1 Cyc., 674.

As was said in *Carrington v. Caller,* 2 Stew. (Ala.), 197:

"If the defendant in such case be deprived of this answer to the action, unless he would restore to the plaintiff what he had received, the rule would be inefficient and the defense afforded by it valueless."

In *Funk v. Gallivan,* 49 Conn., 128; 44 Am. Dec., 210, it is said:

"The law could not take any other position than that it will not lend its aid to either of the parties in an immoral or illegal transaction, but will leave them as it finds them; and to be consistent with this principle, it is necessary to give to either party the right to plead or prove the true nature of the transaction in bar to an action founded upon it."

I am aware that the facts involved in the Alabama and Connecticut cases are not parallel, but the doctrine laid down by these cases is applicable to the matter here under consideration.

As has been well said by the supreme court of Connecticut in *Treat v. Jones,* 28 Conn., 235:

"The object of the law is to repress vice, preserve the peace and promote the general welfare of the state and of society, and no individual has any right to its assistance in enforcing a demand originating in a violation on his part of its principles or enactments."

The procedure of the city marshal, I freely concede, was unlawful, and being such, I unreservedly condemn it. Public officers, of all men, must be held to a scrupulous observance of the law. But I entertain too high an opinion of our laws to believe that there is no method whereby the offending city marshal can be adequately punished without rewarding a malefactor whose lawlessness the city official was striving to curb.

In addition to the Vermont case, from which I have already quoted, I cite the following cases from Oklahoma, which I believe sustain my position: *Blunk v. Waugh,* 122 Pac., 717; *Haley v. State,* 125 Pac., 736.

It is true that Oklahoma has a statute which provides that there shall be no property right of any kind whatsoever in any liquors kept for the purpose of violating the law. In view of the position taken by the majority of this court in the instant case, it is to be hoped that our legislature may, at its next session, enact a similar salutary statute. But a casual reading of the Oklahoma cases cited must convince anyone, I think, that the court did not rest its conclusion upon the statute alone, but upon the broad general principle announced in the *Blunk* case, without reference to the statute, in this language:

"If the courts will not open their doors to enforce an illegal or fraudulent contract, they certainly will not to enforce a demand inseparably connected with a violation of the criminal law."

Adopting the language of an abler writer than myself, who had under consideration at the time these Oklahoma cases and their application to this case:

"It is certainly refreshing to consider this clean declaration of principle, that is as old as the law itself, and its application to the facts in that case, which are

not substantially different from those in the case now under consideration. The declaration was upon the common law, and not upon the statute. I understand the common law to be the result and embodiment in the unwritten law of the centuries-long efforts of the courts to make practical application of the principles of the moral law to the affairs of men. And so the common law has become well adapted to enforce and apply these principles to the facts in the individual cases. I regard the statutes of the several states mentioned but declarations of the common law, or perhaps an extension by statute of the principles of the common law to cover such instances. And I believe the courts would not only have the right, but that it is their duty, to make such application of this principle or rule of law in the absence of statute, when the facts in the case justify it. In view of the facts pleaded and not denied [in the second defense of the instant case], or admitted by the demurrer, I regard it as brazen effrontery on the part of the plaintiff in this case, and indeed an open insult to the law and the courts, to come into a court of justice charged with the administration and enforcement of law, and demand the exercise of its powers to collect for him the value of his outlawed goods, employed in the prosecution of his outlawed business, carried on in defiance and contempt of the laws whose protection he now craves, and that there is here presented a situation pre-eminently permitting and demanding the application of the rule."

The authorities are legion holding void a contract which conflicts with the morals of the times and contravenes the established interests of society, on the ground that such contracts are against public policy. This rule, which is but the adoption of the ancient maxim, *potior est conditio defendentis*—better is the condition of the defendant than that of the plaintiff—is ably discussed in *Pueblo & Ark. Valley R. R. Co. v. Taylor,* 6 Colo., 1.

· I apprehend that where a plaintiff is barred by this rule from recovering on a contract, or *quasi*-contract, he will likewise be barred in an action sounding in tort, where the defendant pleads and proves that the property damaged by him was purchased and kept with the design and purpose on the part of plaintiff of violating the law, especially where the defendant is a public officer charged with the duty of enforcing the law and in the discharge of that duty exceeds his authority.

Other cases supporting this rule are, *Solinger v. Erle*, 82 N. Y., 393, wherein it is stated that Lord Mansfield, in *Smith v. Bromley*, 2 Doug., 696, concedes that, "when both parties are equally criminal against the general laws of public policy, the rule is *potior est conditio defendentis*"; *Branham v. Stalling*, 21 Colo., 211, where Justice Hayt, speaking for the court, follows the maxim, "in equal guilt, the stronger is the situation of the defendant," or, "where misconduct is mutual, the law will not lend its aid to either party." Commenting on these maxims, Judge Hayt says, page 215:

"This rule was not adopted for the benefit of defendants, but simply upon the ground of public policy."

*Norris v. Norris, Admr.*, 9 Dana's Ky. Reps., 317, is cited with approval by Justice Hayt in the *Branham* case, and the following language is quoted therefrom:

"When the parties to an illegal or fraudulent contract are *in pari delicto*, neither a court of equity nor a court of law will aid either of them in enforcing the execution of that which may be executory, or in revoking or rescinding that which may have been executed. In such a case, the law will not be the instrument of its own subversion, and to every invocation of its assistance, replies, *in pari delicto potior est conditio defendentis*."

In *Young v. Thompson,* 14 Colo. App., 294, at 314, Bissell, P. J., quotes with approval from Lord Mansfield the following:

"No claim founded in bad faith, in moral turpitude, in deception upon the public or a third person, or in fraud practiced by one contracting party on the other, can constitute a good cause of action; and that whenever such a claim makes its appearance in a court of justice, the law, ever watchful of the public morals and right, is sure to defeat the dishonest scheme, either by exerting its powers or withholding its aid."

Commenting on the quotation, Judge Bissell says:

"This is a strong, sound, terse and satisfactory expression of the principle which is determinative of the plaintiff's rights. The claim is founded in bad faith."

Certainly there can be no doubt that plaintiff's claim in this case is not only founded in bad faith, but in absolute violation of the law, assuming, of course, that the allegations in the second defense, to which the demurrer was sustained, state the truth.

2. It may be that the weight of authority, if the same be arrived at by counting cases, supports the view expressed by the majority opinion, but I am persuaded, were the matter *res nova,* I would be spared the embarrassing task of writing a minority or dissenting opinion in this case. It is said in the majority opinion that:

"The overwhelming preponderance of authorities supports the ruling of the trial judge upon the demurrer."

From this I assume that the writer of the opinion, and the members of the court who concur in his conclusions, have been influenced, largely, by the doctrine of *stare decisis.* I am the more persuaded that such is the

case by the fact that nowhere in the very able and exhaustive majority opinion is there any attempt to defend the conclusions arrived at, save by the citation of authorities. It may, therefore, be not amiss to briefly consider the doctrine of *stare decisis*. It has been said by our own supreme court in *Colorado Seminary v. Arapahoe Co.*, 30 Colo., 509:

"This court has gone possibly as far as any appellate tribunal concerning the maxim *stare decisis*. The rule, however, is not inflexible, and the maxim should not be allowed to stand as an absolute bar in the way of a re-examination of legal questions previously decided by the same court, if improperly determined, and particularly where the decision reviewed has not passed into a settled rule of property. This is well illustrated in *Calhoun G. M. Co. v. Ajax G. M. Co.*, 27 Colo., 1, wherein this court overruled one of its former decisions upon an important question of mining law announced fourteen years before and repeatedly reaffirmed."

In the opinion in the *Calhoun* case, *supra,* our supreme court said:

"Courts are not bound to perpetuate errors merely on the ground that a previous erroneous decision has been rendered on a given question."

This opinion is of particular interest, in view of the fact that it ignored the doctrine of *stare decisis,* notwithstanding the fact that by so doing the supreme court reviewed and reversed earlier decisions which affected real property, and which had passed into a settled rule of property.

Lord Mansfield has said:

"The law of England would be a strange science, indeed, if it were decided upon precedents only. Prece-

dents only serve to illustrate principles, and to give them a fixed authority. But the law of England depends upon principles."

And again, the same authority uses this language:

"General rules are wisely established for attaining justice with ease, certainty and dispatch. But, the great end of them being to do justice, the courts are to see that it is really attained."

Lord Bacon is authority for the statement that:

"A froward retention of custom is as turbulent a thing as an innovation; and they that reverence too much old things are but a scorn to the new."

In *Ellison v. Georgia R. R. Co.,* 87 Ga., 696, Chief Justice Bleckley, who long graced the supreme bench of Georgia, referring to the doctrine of *stare decisis,* uses this language:

"Minor errors, even if quite obvious, or important errors, if their existence be fairly doubtful, may be adhered to and repeated indefinitely; but the only treatment for a great and glaring error affecting the current administration of justice in all courts of original jurisdiction is to correct it. When an error of this magnitude, and which moves in so wide an orbit, competes with truth in the struggle for existence, the maxim for a supreme court, supreme in the majesty of duty, as well as the majesty of power, is, not *stare decisis,* but *fiat justitia ruat coelum.*"

On the same subject the supreme court of Indiana, in *Hines v. Driver,* 89 Ind., 342, observes:

"When a court comes to the deliberate conclusion that it has made a mistake upon some former occasion, it is generally better, looking to future permanency and repose, that it shall frankly acknowledge its mistake and

declare the true doctrine as it should have been at the time announced.''

In *Mason v. Nelson,* 148 N. C., 495; 62 S. E., 625; 18 L. R. A. (N. S.), 1229, appears the following language:

''The foundation of the rule of *stare decisis* was promulgated on the ground of public policy, and it would be an egregious mistake to allow more harm than good to accrue from it.''—26 Am. & Eng. Enc. of Law (2nd Ed.), 184.

Feeling that my associates have been too much influenced by the doctrine of *stare decisis,* I have devoted perhaps more space to a consideration of that subject than the facts and the situation which confronts us in this case warrant, for we are not, in this case, controlled by any opinion of either of the courts of review of this state, and we have, as I have already pointed out, respectable authority to support the views that I have hereinabove expressed.

But no matter what the opinions of other states may be, or how their number may predominate against the views I have here stated, I would rather see this court establish correct principles, which satisfy its own notions of justice, than to have it trailing unwillingly after hoary precedents that do violence to every sense of justice and common sense.

I do not intend that anything that I have said herein shall militate against the right of the plaintiff to recover for such property as may have been destroyed by the officer of the law, which the plaintiff had a right, under the ordinances, to keep and sell.

Feeling that the trial court committed grievous error in sustaining the plaintiff's demurrer to the defendant's second defense (and I am not considering any other matter whatever) I am profoundly convinced that the judgment of the lower court ought to be reversed.

SCOTT, P. J., specially concurring.

It has occurred to me that the facts in this case should have been stated more fully in the opinion of the majority of the court, which so admirably states the law controlling the case, in order that the exact question decided may be relieved from possible uncertainty.

The Cañon City Labor Club was, at the times mentioned, a corporation organized under the laws of this state. It is charged in that part of defendants' answer, to which the demurrer was sustained, that this corporation was a club consisting of several hundred members, and organized and existing for the purpose of evading the liquor laws of the state and the ordinances of the city of Cañon City in relation thereto, and that the only purpose of such club, aside from its profit, was to furnish the members a place to secure intoxicating liquors in violation of the law.

For the purposes of this case, these must be accepted as the facts, and in addition thereto this court had before it its own judgment rendered since the institution of this action, affirming the judgment of the district court, cancelling the corporate charter of this club for the very reasons assigned in the answer in this case.

The second defense set up in the answer alleged a resolution of the city council, which, in substance, declared the said club to be a nuisance and ordered the city marshal to abate the same by arresting the officers and agents of the club; by confiscating and bringing before the police magistrate all intoxicating liquors found on the premises of the club, together with the arrested officers and agents, there to be dealt with by the city council. But the acts of the defendants complained of in this case cannot be brought within the purview of this resolution.

What the defendants did, and in violation of this resolution, which commanded at least peaceful, if not

lawful methods, was to go to the place occupied by the club, between the hours of nine and ten o'clock on a Sabbath morning, enter the building by means of a key, and at a time when no person was in the building or on the premises except the plaintiff, then manager of the club, and without warrant of authority and with axes and by other means destroy the goods, the value of which is involved in this action. These goods, in addition to intoxicating liquors, included fixtures, glassware, cigars and other property. A part of the liquors were, at the time, involved in a replevin suit between the club and the city. The conduct of the defendants, as appears from the undenied testimony of Walton, the plaintiff, was as follows:

"Mr. Worrell, I think, spoke first. He says, 'Ah, ha, we've got you now, Joe.' I didn't make any remark. He says, 'I have a warrant for your arrest,' I says 'all right, will you read it to me or let me see it,' and Mr. Houston made an attempt, I thought, to let me see the paper and read it, and then Taylor spoke up and says 'beef him,' 'kill him,' 'damn him,' and I was struck from behind with a blunt instrument of some kind right in the ear and fell forward to the floor, and in getting up I was knocked down again, and I was knocked while down, and after I got up the second time. I was then approaching the front door, I was then struck from behind again and knocked down and fell into the little hallway. Before going outside, I got up again and was then struck with an instrument on the cheek bone, the scar is there now, and I fell to the pavement and that is all that I can remember. I fell senseless to the pavement."

It is clear that the resolution of the city council did not order or suggest such conduct and is therefore no defense.

The mere fact that plaintiff had violated the law by the unlawful sale of intoxicating liquors was clearly not

an excuse in law for such conduct or for the destruction of the property.

The defendants, upon the basis of their belief that the club had violated the liquor laws in the past, or might do so in the future, and without intimation or suggestion that such had or would be the case on the particular day, voluntarily left the privacy of their homes, assembled together, entered a closed and locked building, and there deliberately engaged in the trespass and destruction complained of. This constitutes wilful trespass.

I know of no case where private punishment for public wrong has been sanctioned by the law, or where public wrong has been held as an excuse for a wilful private trespass. If the doctrine of the dissenting opinion in this case is to be approved, it must apply not only to those who violate the liquor laws, but all laws as well, and thus due process of law is a constitutional guarantee in name only.

The supreme court of this state has fully determined this question in the case of *Canon City v. Manning,* 43 Colo., 144, and the rule there announced is sustained by an unbroken line of authority. The perpetuity of the government rests upon the principle therein stated, that neither municipalities nor persons may take the law into their own hands. Wrongs may be prevented and punishment inflicted only through courts of competent jurisdiction. That no person shall be deprived of life, liberty or property without due process of law is a guaranty to the guilty and innocent alike. Popular government, if it is to continue, must be a government of law and not of force. Individuals cannot prevent or punish one wrong by means of the commission of another, for such would be incipient anarchy. If the law is not sufficient, the remedy is with the legislature.

The law of this state has provided a means for the destruction of gambling paraphernalia, but even in such

case it is to be accomplished in an orderly manner and upon the order of a court of competent jurisdiction. The courts can make no distinction as to property or persons as between law violators, else law and order must seek other habitations and courts of justice and constitutional guarantees stand as a mockery.

However deplorable the situation, as presented in this and other cases from the same locality, as regards the violation of the liquor laws, I still believe the law sufficient to provide both punishment and prevention, and I cannot lend my sanction to the unlawful acts of some of the citizens, upon the theory that these are to prevent the unlawful acts of others.

The final appeal of every American must be to the supremacy of the law. The principle involved in this case is different from that wherein recovery is sought for the value of goods in case of sale, where the sale of such goods is prohibited by law. There can be no question, however, but that these goods are property and have value, even though sale is prohibited by law.

Decided December 16, A. D. 1912. Rehearing denied January 13, A. D. 1913.